120 541
134 162
134 431

120 541
f141 592

Coe College, Appellant, v. City of Cedar Rapids.

Streets: PLAT: DEDICATION OF. The object of a plat is to avoid complications in conveying small parcels of land, and where a survey and plat are properly made and dedicated, it amounts to a deed in fee simple to those portions therein set apart for public use.

Same. A plat which fails to designate the corners of lots and blocks, the width of claimed streets, to point out the location of a stone as in the street, or name the ground as streets, does not comply with the statute so as to constitute a dedication of the streets.

Streets: JUDICIAL NOTICE. Courts will not take judicial notice of the width of streets in a special charter city where they are not established in the charter, but the same is a matter of proof as though the city was incorporated under the general law.

Dedication: EVIDENCE. Intention to dedicate land to a public use may be inferred from its shape, dimensions, situation, etc., but the evidence fails to bring this case within the rule.

Practice: SUBMISSION OF CAUSE: AMENDMENT TO ABSTRACT. An appeal will be disposed of on the record as presented on the first submission, and an amendment to the abstract filed after a rehearing has been granted will be stricken out on motion.

Street: DEDICATION: DESCRIPTION. A plat of an addition to a city is insufficient to establish the dedication of a street where it fails to disclose the lines, corners and dimensions of the land claimed to have been dedicated The description must be as definite as is required in a conveyance.

Dedication: EVIDENCE. Evidence considered and held insufficient to show a common law dedication of a street.

Estoppel. Representations of the agent of a third party, a stranger to the title, that the space between certain lots is a street will not estop the owner from asserting title against the claim of a city that the same is a street.

*Appeal from Lynn District Court.*—Hon. H. M. Remley, Judge.

Thursday, May 21, 1903.

ACTION to quiet title to a strip of land in an addition
to the city of Cedar Rapids. The defense interposed was
that it had been dedicated as a street and accepted as such
by the city. A portion of the plat is annexed. Surveyor's
notes were attached stating that certain named streets
were continuations of the streets of the same name in the
original plat of Cedar Rapids. "Polk street has a set-by
at Iowa (First) avenue of sixty feet, as shown on plat, and
is eighty feet wide." Some of the lots are sixty feet by one
hundred and forty feet, others eighty feet by one hundred
and forty feet, and still others one hundred feet wide and
three hundred and thirty feet long. "Fractional blocks
Nos. 10, 13, 16, and 17 are fractional as shown on plat."
All streets save the strip in dispute are designated by
some name, and their breadth given. On hearing the
petition was dismissed, and plaintiff appeals.—. *Reversed.*

*Heins & Heins* and *Deacon & Good* for appellant.

*J. N. Hughes* for appellee.

The following is the plat referred to:

LADD, J.—In 1871 the owners of a tract of land caused it to be surveyed, and map thereof made, acknowledged, and recorded. It was designated "Green and College Addition to Cedar Rapids." Because of alleged defects in the title this dedication was ratified by plaintiff in 1880. That part of the map only which is essential to an understanding of the controversy is set out. The parcel of land in dispute lies between block fourteen and fractional block thirteen. The line crossing block thirteen is the section line, forming the south boundary of the proprietor's land, that below belonging to one Calder, since deceased. The distance from the southwest corner of block fourteen, parallel with its south boundary, is a little less than eight feet. It will subsequently appear that there is nothing to show how far apart the two blocks are. The city of Cedar Rapids, first formally asserted title to the disputed land in October, 1898, by ordering that a street be extended between blocks thirteen and fourteen from First to Second avenues, sixty feet wide, immediately west of block fourteen, that all west thereof to block thirteen be vacated; that the portion vacated below the alley be exchanged with Calder for that within the sixty feet below the section line; and that the portion vacated north of the alley be sold to the owner of lot five in block thirteen for $600. Thereupon plaintiff began this action, asking that its title to the land be quieted.

The plaintiff's title is conceded in the pleadings, unless lost by dedication to the public as a street. Did the acknowledgment and recording of the map amount to such dedication of this strip? The Code of 1860, under which the ground was surveyed and platted, allowed the proprietor of a tract of land to make a plat thereof as therein-prescribed. First he must cause a survey to be made, marking the lots with stakes, and fixing a stone in a permanent manner in some point in

1. PLAT: dedication of,

every street. Second, an "accurate map shall be made of such plat, designating the corners. where the stakes are placed and the points where the stones are fixed, and marking and describing the length and breadth of the lots, as well as the breadth and courses of the streets and alleys, and the breadth shall be designated by feet and inches when practicable." Revision 1860, sections 1017, 1018. The acknowledgment and recording of such map is declared to be a deed in fee simple of such portion of the land as is therein set apart for public use. The Code of 1873, under which the dedication. was ratified, did not differ materially from that of 1860. In this way numerous and complicated descriptions of land to be conveyed in small parcels are avoided, and the location of each and the intervening streets and alleys clearly exemplified. All are described in one instrument, and by reference to it every subdivision may be found, and the mention of lots or blocks by numbers, or the streets and alleys by name, or some equally explicit designation, becomes as definite and certain as though described by metes and bounds. *Brown v. Taber*, 103 Iowa, 1; *Milburn v. City of Cedar Rapids*, 12 Iowa, 246.

Strict compliance with such statutes ought not to be exacted. But they are to be followed substantially, and by this we mean that the divisions into which the tract of land is separated by the acknowledgment and recording of the map should be pointed out 2. SAME: with such precision, and the boundaries so fixed therein, as that these may be certainly and definitely located from the data furnished. Otherwise the object of the statute is not attained, and resort to description by metes and bounds rather than by reference to the map will be essential in the transfer of titles. Ordinarily the map, with the accompanying notes and acknowledgment, must speak for itself, and, as no intrinsic evidence was offered, we are not to look beyond these in the instant case. Lo they

urnish data pointing out a definite portion of the tract platted? If so, do they indicate an intention to dedicate it as a street? These inquiries must be answered in the negative. With respect to it and fractional block thirteen, the requirements of the statute were ignored to such an extent as to indicate that because of their situation no dedication was intended: (1) Neither the corners of this block nor any lot therein are indicated; (2) the breadth of the disputed strip of land is not given; (3) no point therein marks the location of a stone as in the street; (4) the strip is not named a street; (5) the proprietors could not well make of it a public thoroughfare.

Let us see if there is any sufficient explanation of these omissions and defects. Appellee contends that the width of this strip and the lots in block thirteen may be ascertained by computation. Twelfth street is designated Polk street on the original plat, and has a set-by, according to the surveyor's notes, of sixty feet at First avenue, and is declared therein to be eighty feet wide. But appellee argues that it is a continuation of a street sixty feet wide in the orginal plat of Cedar Rapids, and hence must have been but sixty feet wide below First avenue. If so, it is said that lot one in said block must be eighty feet wide, the other lots sixty feet each, and this strip eighty feet, thereby explaining the appearance of the map. But the trouble with this arrangement is that there is nothing in the record to indicate that this street was to be a continuation of a street in the original plat, and such plat was not introduced in evidence. As other streets are specifically mentioned as being such continuations, the omission of Polk street as one of them indicates it was not included. But, even if included, the width stated cannot be rejected merely for the purpose of corresponding with a street elsewhere of the same name, supposed to be narrower. Nor will this court take judicial notice of the width of the

streets even in cities organized under special charter. While courts take notice of the incorporation of municipalities by special acts of the legislature and of the territory included, it is because these matters are disclosed by the enactments themselves. See *Hard v. City of Decorah*, 43 Iowa, 313. The streets of Cedar Rapids were not established in its charter, and their width is matter of proof, the same as if in a city organized under the general law of the state. See *Diggins v. Hartshorn*, 108 Cal. 154 (41 Pac. Rep. 283); *Porter v. Waring*, 69 N. Y. 250; 17 Am. & Eng. Ency. of Law, 939.

*3. STREETS: judicial notice.*

It is further argued that as the distance from the northwest corner of block fourteen to the northwest corner of block thirteen is but the sixty feet "set-by" greater than the south side of College Block, it must be six hundred and eighty feet, and that as deducting the frontage of the block fourteen leaves but three hundred and eighty feet, this must have been divided into five lots of sixty feet each, and eighty feet left for a street. But what evidence have we that the dedicators so intended? Nothing whatever, save the existence of the lines on the map. In no other respect was the statute followed. An estimate by measuring these lines and comparing with the scale of the map would not furnish reliable data from which to make computation. *Palmer v. Osborne*, 115 Iowa, 714; *Minneapolis & St. Louis Ry. Co. v. Town of Britt*, 105 Iowa, 198. Moreover, a glance at the map indicates that even a measurement of the lines would not produce this result, and show lots to be of the same width.

Nor can the width of the lots or strip, as suggested, be inferred from uniformity in the map; for some of the streets are noted as being of the same breadth as the original plat of Cedar Rapids, said by appellee to be sixty feet, and First avenue is one hundred and twenty feet wide. Some of the lots are sixty feet in breadth, others eighty feet, and still others one hundred feet. Effect should

be given all lines and marks in such a map, if possible but a description ought not to be supplied by mere assumption. Indeed, the entire argument of appellee is based on the assumption that the lots in block thirteen and the disputed strip have their boundaries defined.  Of course, the platting of block thirteen is material only as it may aid in settling the question at issue.  Certainly the record furnishes no data by which to fix upon the breadth of the ground in dispute.  Nor is it marked by a stone.  Nor is it designated a street.  If stakes were set at the corners when this was done, they are not designated on the map. As said, all of the requirements of the statute are ignored. Of course, land may be dedicated to the public use in a 4. DEDICATION: plat without naming such use.  But the inevidence. tention to dedicate must appear, and this may sometimes be inferred from the shape of the land, its situation, dimensions, and the like.  *City of San Francisco v. Burr*, 108 Cal. 460 (36 Pac. Rep. 771); *City of Indianapolis v. Kingsbury*, 101 Ind. 200 (51 Am. Rep. 749); *Taraldson v. Town of Lime Springs*, 92 Iowa, 188. But all these are lacking in the present case.  Its shape, in so far as indicated by the lines, repels such an inference; for no one would suppose a road would be laid out but eight feet in width at Second avenue, especially when not necessary to furnish access to any legally platted lot. Every other parcel of land dedicated as a street is named both on the map and in the surveyor's notes, and the breadth of each stated.  The omission in this surely tends to negative any supposition that it was intended for such use.  There is no similar street of which this might be deemed an extension in the city.  The land immediately north of the college was platted as a single block.

_But appellee urges that the certificate of the district judge attached to the plat precludes the college from asserting any part of it had not been dedicated.  Without deciding the point, it is enough to say that no such certificate

was disclosed in the record as originally presented. The

**5. PRACTICE: submission of cause: amendment of abstract.** case is to be disposed of on the record as it was on the first submission, and appellee's amendment to the abstract, filed after a rehearing had been granted, will be disregarded and stricken on appellant's motion. *Iowa City v. Johnson County*, 99 Iowa, 513; *Parsons v. Parsons*, 66 Iowa, 754; *Nixon v. Downey*, 49 Iowa, 166. The claim that this disputed ground had been so used before the ratification of the dedication as to stamp it as a street is without support in the evidence. Upon a careful examination of the entire record, we reach the conclusion that none of the statutory requisites of a valid dedication by platting of the land appearing between thirteen and fourteen were observed, save the drawing of lines not definitely located, and that it was not set apart for the public use. *Minneapolis & St. Louis R. Co. v. Town of Britt*, 105 Iowa, 198. See, also *Fisher v. Carpenter*, 33 Kan. 184 (12 Pac. Rep. 941); *Robinson v. Coffin*, 2 Wash. T. 251 (6 Pac. Rep. 41).

Under the statutes the acknowledgment and recording of the plat is to be treated as equivalent to a deed in fee simple of the portion of land set apart to the public use.

**6. STREET: dedication: description.** If so, the description must be as definite as is necessary to a conveyance. While the east boundary of this strip may be ascertained from the map, no indication is given of the location of the west boundary. That line is not defined, and no data is furnished by which it can be fixed. If stakes were driven at the boundaries, their location is not indicated on the map, as required by the statute. Extrinsic evidence of their existence was not offered, and we have no occasion to determine whether they were intended as permanent monuments. It may be that parts of block thirteen have been sold since, and but a space of eighty feet left. This affords no evidence of what the plat with the surveyor's notes evidenced an intention to leave. Conceding a strip eighty feet wide to

be now in dispute, how does that aid in determining the breadth of the land between blocks fourteen and thirteen, according to the plat when it was filed?   Especially when no data from which the width of the north side of the latter block may be learned is given.   The plat, then, could not have operated as a conveyance of the strip to the city, because it was impossible to ascertain from it what is alleged to have been dedicated;   Possibly the proprietors may have thought that land in that locality might be needed as a street in the future in event Calder should plat his land.   This is no more than a guess, having no bearing on the issues as to whether there was a present dedication.   The mere fact that it does not appear to have been platted as a lot does not justify the conclusion that it was dedicated as a street.   It is immaterial for what purpose reserved, so long as the plat and notes bear no affirmative evidence of an intention to dedicate to the public use.   Of course, if we might assume the west line of the strip to be defined on the plat, and that Calder was about to plat the land south so as to extend this strip as a street, and that the proprietors had this fact in mind when acknowledging and recording the plat, it would not be difficult to find a dedication as a street.   Courts, however, are to take the facts as the record presents them, without imagining or assuming others necessary to work out and support some plausible theory.   The statute must be substantially complied with in order to constitute a dedication to the public use, and, for the reasons stated, this was not done with respect to the strip in controversy.

II.   As argued by appellee, the lines in a plat may aid in ascertaining a common law dedication.   But other evidence is necessary, and that is wanting.   That one of 7. DEDICATION: plaintiff's trustees supposed, until he had investigated, the strip to be a street, was a mere opinion, not entitled to the slightest weight as evidence in the case.   There was nothing in its use to indi-

cate to its owner that the public was claiming it. The laying of a few plank lengthwise in the sidewalk at each end by the city might make crossing more convenient. It did not alone show that people generally traveled over the tract. In 1880 the college conveyed to George Greene "so much of the west half of the northwest quarter of section 22, in township 83 north, of range 7", etc., "as lies southwest of Coe (Fourteenth) street and southeast of Iowa (First) avenue, as shown by the recorded map of Greene & College addition to Cedar Rapids, known as fractional block thirteen (13), containing lots one (1), two (2), three (3), four (4), and five (5), also block fourteen (14), containing ten lots, numbered from one (1) to ten (10), inclusive, and also sub-outlot, corner of Coe and Eagle streets."

On what theory this can be said to show a purpose to dedicate a parcel not included and not made use of by the public is not explained. No more than retention of title is indicated; the purpose is undisclosed. Had the strip been in use for travel, this circumstance might have been important. As it is, the intent to give away the land retained is not to be inferred from the fact of not selling it. If no taxes have been paid, it is because none have been levied. No obstacle appears to have been interposed thereto by the college. There is no evidence that plaintiff or its agents ever represented the disputed strip as a street in the sale of lots or otherwise. The *animus dedicandi* has not been proven.

III  The heirs of George Greene partitioned the real estate left upon his decease, and the part described in the deed above mentioned fell to Elizabeth Greene. She conveyed the same to the Cedar Rapids Improvement Company. It may be, as appellee contends, that the college intended to convey the land in dispute to George Greene, though there is no proof from which this might be inferred but a mere intention to convey cannot be construed to

constitute a conveyance. *King v. Dickson*, 114 Iowa, 160.

8. ESTOPPEL.

There is some evidence that the agent of the improvement company represented, in selling lot 5, in block 13, and lot 1, in block 14, that the intervening space was a street, and appellee argues that the college is thereby estopped to deny that it is such. It seems needless to say that representations by the agent of a third party, a stranger to the title, could not work an estoppel in favor of the city.—REVERSED.

McCLAIN, J. (dissenting).—The majority of the court concede that a substantial compliance with the provisions of the statute is all that is necessary to render a plat valid, and, in my judgment, the plat in question sufficiently complies with the statutory requirements. It must be understood that what is set out in the majority opinion is only a portion of the plat. It appears from the record that the course of Fourteenth street (the next street northeast of Thirteenth street and parallel with it) is determined by four different stones indicated on the plat, and referred to in the surveyor's notes accompanying the plat and recorded with it. Moreover, the direction of other streets is established by reference to connecting streets in the recorded plat of the city of Cedar Rapids existing at the time this plat was made and filed. There can be no difficulty, then, in determining, as a matter of fact, the courses of the different streets on this plat; for the plat itself and the notes accompanying it give the number and width of lots in blocks eight, twelve, fourteen and fifteen, shown on the portion of the plat copied, and other blocks shown on the original plat as introduced in evidence; so that it is plainly apparent that Thirteenth street is parallel with Fourteenth, and that the strip of land in controversy between block fourteen and fractional block thirteen is parallel as to its northeasterly line with Thirteenth street. The width of the other streets on the plat

is also designated, or easily determinable, from the data
given on the plat itself and in the notes accompanying it.
The surveyor further recites in his notes that "at the
corners of blocks marked 'stone' there is a good substantial
stone planted in compliance with the law; at all the other
front corners of all the lots there are good substantial oak
stakes, well driven; at all the corners of alleys on outside
of blocks there are oak stakes, well driven." That in
making this statement the surveyor had in mind the lots
and alley of fractional block thirteen appears from the
recital in his notes that "fractional blocks numbers ten,
thirteen, sixteen, and seventeen are fractional as shown
on plat." These recitals are made to show compliance
with the statutory provisions referred to in the majority
opinion. The fact that no stone is shown to have been
planted on the lines of the strip in controversy is not
significant as to the intention to designate it as a street,
for there is the same omission as to other strips which are
otherwise clearly described as streets, nor is the failure to
give the width in feet and inches controlling as to such
intention, for the statute directs that the width shall be
given "when practicable." The location of stakes at each
front lot corner, as shown on the plat, is just as definitely
fixed as by a specific recital as to each stake. That the
plat is made in substantial compliance with the statute
must, I think, be conceded, and it must therefore be
deemed effectual for all the purposes of a plat, so far as
the intention of the owner can be ascertained therefrom.
This plat, then, shows the strip of land in controversy,
with a course determined by the line of block fourteen,
and lying between that block and the northeasterly line of
block thirteen, by a stake at the northeast corner of lot
five (the corner of the block), and another stake at the
alley in the middle of the block. The width of this strip
is then determinable in two ways: First, by the fact that
it appears by the plat to be of the same width as other

streets there described as eighty feet wide; and, second, by the fact that it lies between block fourteen and fractional block thirteen, the lines of which are fixed by stakes in the ground.

We have no question before us as to any possible discrepancy between the width indicated by the lines of the plat and the stakes as set in the ground. · If any controversy should arise as to the southwesterly boundary of this strip, it will have to be determined as other questions are determined which depend upon the location of fixed monuments. The stakes placed by the surveyor to mark the boundary of block thirteen were fixed monuments in the same sense as the stones described in the plat and notes. The plat is to be made according to a survey, and is to refer to monuents fixed by the surveyor. It is a map. The lines and figures thereof and the monuments therein referred to represent something, and speak for themselves. See *Taraldson v. Lime Springs*, 92 Iowa, 187. The plat and notes, then, do describe the strip of land in controversy as to its dimensions and location, and this description by monuments would be sufficient to support a conveyance. The only question, then, is whether the method of designation thereof indicates that it is "set apart for public use" in such manner that the filing and recording of the plat "is equivalent to a deed in fee simple" of this strip to the city for a street, as provided in Revision 1860, section 1021. In other words, the controversy now is whether the strip of land which is conceded to exist, and which is marked on the plat as bounded on the northeast by block fourteen, and on the southwest by the so-called fractional block thirteen, and which connects at one end with a street marked on the plat as First avenue, and extends in a southeasterly direction to the limits of the plat, belongs to the city of Cedar Rapids as a street by virtue of a dedication indicated by the plat, or whether, for want of any indication of an intention to dedicate, it is the property of

Coe College. The strip in question is marked on the plat just as other strips which are conceded to be indicated as streets. If the intention of the owner was that it should be held for sale or use in some other manner than as a street, would he not have separated it by some line or mark at the southwesterly end from First avenue, and at the southeasterly end from Second avenue? So far as any lines or marks on the plat are to be considered as of significance, the person who drew it could not more aptly have indicated the intention that the strip in controversy should be a street. The only possible objections to recognizing this strip as a street are that it is not named, and that it does not have full connection at the southeasterly end with Second avenue, which is indicated on the plat as a street with which it should make connection in order to furnish a thoroughfare from Second avenue to First avenue. But, as to the second of these objections, I think that it is of no importance, for the reason that the strip is indicated as a street so far as the territory covered by the plat extends. If the owner of the territory south of that covered by the plat should choose to file a plat of that territory to correspond with this plat, then the strip would be continued as a street, and would fully connect with Second avenue. No further connection than that made was possible in this plat, for the strip extends apparently as a street as far as the plat extends.

As to the objection that the street is not named, I have only to say that that consideration does not seem to me to be controlling. That it might be left to be named at a subsequent time, either by the dedicator or the city, I think too plain to admit of elaboration. In other words, I cannot get away from the position that the plat shows a strip of land designated as a street just as other strips of land in the plat are designated as streets or parts of streets; that the location of this strip is definitely established; and that looking at the plat as a whole, and the

designation of this strip as indicated by the plat, no doubt is left in the mind of any reasonable person that the intention was that this strip should be a street. For these reasons I feel compelled to dissent from the conclusions reached by the majority of the court, and think that the decree of the lower court should be affirmed.

· I am authorized to say that Mr. Chief Justice Bishop concurs in the views here expressed.