[East B'ham Realty Co. v. B'ham Machine & Foundry Co., et al.]

bill cannot be sustained as one for the cancellation of a conveyance, for the reason that no facts are stated upon which a decree of that sort might be predicated. Nor do we see that the bill can be amended, so as to give it equity as one for cancellation, without working an entire change of the cause of action. There is no hint, as the bill now stands, of any facts upon which to base a case of cancellation of the deeds.

But it is said that the chancellor should have retained the bill for the purpose of requiring the defendant to specifically carry out the contract in respect to the personal property. Even if the bill is susceptible of this interpretation, yet that the complainants have a complete and adequate remedy at law in this view of the case is certain, and a complete answer to the suggestion. —*Lewman v. Ogden,* 143 Ala. 351, 42 South. 102.

The decree of the court dismissing the bill must be affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.

# East Birmingham Realty Co. *v.* Birmingham Machine & Foundry Co., *et al.*

### *Bill to Quiet Title.*

(Decided April 22, 1909. 49 South. 448.)

1. *Quieting Title; Scope of Inquiry.*—Where the bill asserts no additional condition of equitable cognizance than that prescribed by the statutes for quieting title, and answer is made propounding defendant's right, interest or encumbrance upon the land, the only province of the court is to ascertain and declare defendant's interest in the land.

[East B'ham Realty Co. v. B'ham Machine & Foundry Co., et al.]

2. *Dedication; Platting and Selling Lots.*—Where one plats land and lays off lots and streets according to the plat, and sells one or more of the lots with reference thereto, it amounts to an irrevocable dedication by him of the land designated thereon as streets, alleys, squares and commons, to the public for the public use.

3. *Same; Ascertainment of Owner's Intention.*—While the determination of the intention of the owner as to the question of dedication of land for public use is a vital factor, the existence of the intent is to be ascertained from the acts of the owner, and not from the hidden purposes of his mind.

4. *Same; Platting; Designation of Street; Necessity.*—While a map or plat does not desigate a space by name as a street, highway or alley, in the area platted, yet a designation sufficient to accomplish the dedication of the space to public use may appear from the situation created by the relative location of such blank spaces and the lots or blocks, and from the purposes to which such lots or blocks are expected to be devoted, and from the lines and courses indicated on the map as they relate to the lines and subdivisions made.

5. *Same; Methods.*—The statutory methods for dedicating land to public use do not prevent such dedication from being accomplished by common law method.

5. *Same; Intention; Evidence.*—If the fact that the owner can be presumed to be innocent of an intention to violate the penal statute relative to the platting of land can be invoked by the owner as to his intention to dedicate a strip of land embraced in a tract which has been platted but not designated by a street or alley, such presumption will only be prima facie, and hence, rebuttable, so as to be at most only an element in the whole evidence going to refute the insistence of an intention to dedicate the strip.

7. *Same; Effect of Owner's Subsequent Act.*—If the owner of land has effected a dedication for public use of a part of the strip by filing a map or plat including the strip, and afterwards disposed of the platted property with reference to such map, the fact that the owner had written in contracts or deeds relating to the land, a different intention would not avail to restrict the dedication already accomplished, nor would the acceptance by the purchaser of such lot of deeds or contracts relating to a particular use of the dedicated strip affect it as such.

8. *Same; Evidence.*—The evidence in this case examined and held to show that the owner had designated a certain strip of land as a street or highway, although it was not designated as such street or highway on the map.

9. *Vendor and Purchaser; Innocent Purchaser; Illegal Platting.*—The prohibition and penalty prescribed by the Acts of 1886-7, page 93, is diretced against the owner of the land, and hence, a violation of the law by the owner would not affect the title of a purchaser of one of the lots who was innocent of the violation.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

[East B'ham Realty Co. v. B'ham Machine & Foundry Co., et al.]

Bill by the East Birmingham Realty Company against the Birmingham Machine & Foundry Company and others. From the decree there was an appeal and cross-appeal. Reversed and remanded on cross-appeal, with directions.

LONDON & LONDON, for appellants.—Counsel refer to and cite the cases as to the statute under which the bill was filed. No dedication was made by the map nor by any act or conduct of the East Birmingham Land Company, or its successors in title under the act of 1886-7, p. 93. This being true, the rules applicable to a common law dedication cannot obtain here because the effect of the map is fixed by the statute, and the strip not being made a street by the force of the map could only become one by some act of the owner which would estop them from denying that it was a street. The acts done were effectual to reserve the space for railroad purposes.— *Evans v. Western Ry Co.*, 90 Ala. 54; *Heirs v. Penn. R. R. Co.*, 57 Am. Rep. 537; 13 Cyc. 441; 120 Ia. 541. Bearing on the question of dedication we beg to submit the following definition.—*Elyton L. Co. v. S. & N. R. R. Co.*, 95 Ala. 641; 9 A. & E. Ency of Law, 21 Prescription by adverse user.—*Steele v. Sullivan*, 70 Ala. 595; *Hoole v. Atty.*, Gen. 22 Ala. 190; Washburn on Easements, 197. The use by the public must be adverse and not permissible.—*Steele v. Sullivan, supra;* 9 A. & E. Ency of Law, 69. As to what constitutes a dedication.—Authorities supra; *Gage v. M. & O. R. R. Co.*, 84 Ala. 224; *Forney v. Calhoun County*, 86 Ala. 463; *Landless v. Hamilton*, 77 Mo. 554; *Moore v. Hawk*, 57 Mo. App. 495; *Harper v. The State*, 109 Ala. 66; *Quinn v. The State*, 49 Ala. 353; *Reid v. Birmingham*, 92 Ala. 339; *Sherrer v. Jasper*, 93 Ala. 530; *Webb v. Demopolis*, 95 Ala. 116; *Roberts v. Matthews*, 34 South. 624; Bigelow's Estoppel, 635; 2 Hermann on Estoppel, sec. 1142.

CAMPBELL & JOHNSTON, for appellee.—The bill should be dismissed because complainant was not in possession. —*Johnson v. Johnson,* 41 South. 522; *Rosebrook v. Baker,* 44 South. 198; *Lyon v. Arndt,* 38 South. 242; *Ladd v. Powell,* 39 South. 46; *Strong's Case,* 80 Am. Dec. 441. The bill should be dismissed because plaintiff has no title and, therefore, could not have constructive possession even if defendants were not in possession.—*Bernstein v. Humes,* 71 Ala. 260. The bill should fail because there had been a dedication, and the same had been accepted and used by the public for nineteen years.—*Roberts v. Matthews,* 34 South. 624.

McCLELLAN, J.—The East Birmingham Realty Company filed this bill to quiet title to real estate, under Code 1896, § 809 et seq., against the Birmingham Machine & Foundry Company, et al. The land in question is described in the bill as being a strip 50 feet wide and 2,700 feet in length, having its termini, on the west, at the right of way line of the South & North Alabama Railroad Company (Louisville & Nashville Railroad), and, on the east, at the right of way line of the Georgia Pacific Railway Company, now owned by the Southern Railway Company. An indispensable aid to an understanding of the status involved on this appeal, as well as in explanation of the reasons on which our conclusions are based, inducing decision, is the map attached, as Exhibit A, to the bill. A fac similie of the map will therefore be here incorporated in the opinion:

[East B'ham Realty Co. v. B'ham Machine & Foundry Co., et al.]

The exhibit is, the record states, only a part of the plot-ting of an addition to "East Birmingham," by the East Birmingham Land Company, to the city of Birmingham, as that plotting is indicated by the entire map filed in the probate office of Jefferson county on July 13, 1887. The omission of the whole map is explained on the ground of want of necessity in this cause. As said by solicitors for appellant in their brief, it is not disputed

that the original map was duly acknowledged and re-corded as required. The strip in question is that lying between, generally and parallel with Avenues 10 and 11 as they appear on Exhibit A, and is further indicated by short lines or dashes, in which, in the space between the two tiers of blocks, on the north side from 38a to 39b, and, on the south side, from 38b to 29c; the two rail-way ways being at the west and east ends. In our view the decisive inquiry is whether there was a dedication to the public of the described strip by the plotting and fil-ing of the map thereof in the probate office of Jefferson county, and an acceptance of such dedication in such sort as to estop the East Birmingham Land Company from the assertion of ownership, in severalty, thereof. If so, the complainant's bill must fail.

The respondents are the owners of several of the lots or blocks abutting on the strip in question. Many decis-ions rendered by this court have established the rule that on a bill filed under our statutes for quieting titles to real estate, asserting no additional condition of equi-table cognizance, and in response to which answer is made propounding the defendant's right, title, interest, or claim in or incumbrance upon the real estate involved, the only province of the court is to ascertain and declare the defendant's interest, right, or claim in or to the real estate in question. This is the letter of the statute. This bill is controlled by the rule stated, though it must necessarily result, in this instance, that, if a valid dedi-cation of the territory before described was accomplish-ed by the original company, the complainant can have no interest or right in or claim to the strip involved cap-able of assertion. The acts, in cases of the character in hand, operating a dedication, in the sense of full accom-plishment, of lands to public uses, have been recently stated in the case of *Roberts v. Mathews,* 137 Ala. 528, 34 South. 624, 97 Am. St. Rep. 56, a decision citing and squaring with previous announcements by this court on

the subject, in this language: "It is well settled by decisions of this court that, where a person plats land and lays off lots according to such plat, and makes sale of one or more of such lots with reference thereto, he irrevocably dedicates the land designated thereon as streets and alleys, highways, squares, and commons, to the public, for public use." As we understand solicitors in the cause, this comprehensive declaration, often used by this court, is not doubted. It is its application to the case in hand that is disputed for appellant. Nor do we understand that there is any controversy between the parties litigant as to these facts: First, that the East Birmingham Land Company owned the territory in question along with much adjacent territory; second, that that company plotted its land surrounding the strip in dispute, lying between Avenues 9 and 11, caused a map thereof to be prepared, divided the territory into alleys, named or numbered streets, numbered blocks, and numbered lots, and duly acknowledged and caused to be recorded, in the proper place, such map; and, third, disposed of blocks and lots, to persons or corporations, with reference to such map or platting. It thus results that the inquiry narrows to this: Was the strip in dispute so designated as one of the avenues of travel, service, or use as to bring it within the definition of a "dedication" before stated; or, conversely, must the disputed territory be excepted from the effect of the enumerated acts by the absence from the plotted map of a specific designation of the strip as an alley, street, highway, common, etc.?

In determining a question of dedication vel non of real estate to public use, the intention of the owner is, of course, a vital factor. The existence vel non of the requisite intent is not to be ascertained, however, from the purpose "hidden in the mind of the land owner," but is read by the court from acts of the owner.—13 Cyc. p. 452, and notes. The result, from the principles stated,

is that the issue here is purely one of fact. In 1887-88 the East Birmingham Land Company (which we hereafter refer to as the "land company") owned a considerable area of land in the neighborhood later called "East Birmingham." As indicated by Exhibit A, some of its holdings lay in the angular space between the South and North and the Georgia Pacific Railroads. The land company conceived the idea that its property between Tenth and Eleventh avenues was well situated for sites for manufacturing enterprises. Doubtless this conception was suggested by the comparative convenience of two leading lines of railway to this particular territory. Without question this situation and contemplated development of an industrial section adjacent to the city of Birmingham led the land company to construct—what is called in some of the deeds to lots or blocks in the plotted area a "Service Track"—a railroad track connecting the two railway lines and traversing the space now in dispute. It is common knowledge that to a manufacturing enterprise of any real consequence, means, by rail or water, for the transportation of materials and products to and from the plant, is absolutely essential to the success of the undertaking. It is therefore entirely reasonable to conclude from the proof in this record that the land company, inducing the location, as was done, of a number of manufacturing concerns on the territory described, held out, either by affirmative statement or by acts reasonably calculated to so impress the prospecting manufacturer, the fact of such convenience of transportation as the mentioned situation naturally afforded or would afford. While this status and the acts mentioned may not have both been existent and of force at the time the map was filed for record, they are potent in an investigation of the intent, to dedication vel non, characterizing the acts of the land company in the premises, for, though the construction of the "service track" may have been subsequent in time to the filing of the

map, this fact is receivable in reflecting, to a degree at least, the intent possessed by the land company in respect to the disputed strip when the plotting was made and filed. It appears from the record that several of the enterprises located between Tenth and Eleventh avenues constructed spur tracks, from the "service track," into the premises of such enterprises, have used the "service track," in connection with such spur tracks, for many years, and in at least one instance a platform was projected over a part of the disputed strip from the plant to the "service track." Besides, it also appears that, in the use of the "service track," for loading and unloading materials, etc., some of these enterprises have used a part of the space contiguous to the "service track."

The space in litigation is shown to be, in part, capable of use for travel and, in part, from its swampy nature, not so capable. It has never been improved as a highway of any character, nor has it ever been obstructed by fences or otherwise, nor the free use, as far as capable, forbidden by the land company or its successors in right; and there are tendencies in the testimony to the effect that the space in question was used as a street, and, with the intent to so constitute it, was laid off by said company. Without assuming to set forth every incident of circumstance or element of fact bearing on the issue in hand, viz., dedication vel non by the plotting described and its filing and acceptance thereof, the foregoing observations serve to indicate the general situation of the lands plotted, including the strip in dispute, and the purposes thereof as suggested by the facts and inferences we have enumerated. In view of these the land company filed the map of which Exhibit A is a correct copy in part. This exhibit shows the area between Tenth and Eleventh avenues to have been divided into 16 blocks, and, with the exception of blocks 38a and 38b, these blocks were subdivided into three or more lots

each. These lots, except lot 2 in block 33a, which only had a front strip in dispute, extended, respectively, from Tenth and Eleventh avenues, respectively, to the disputed territory. The blocks between the named avenues were, as laid off, without alleys, in them, as were blocks 14 to 21, inclusive, plotted between Avenues 9 and 10. This fact is consistent with the idea acted on by the land company in devoting the space between Tenth and Eleventh avenues to sites for manufacturing plants, and its consistency is demonstrated by the difference, apparent from Exhibit A, between the sizes of lots in the area bounded by Ninth and Tenth avenues and those bounded by Tenth and Eleventh avenues. The purpose evidently was to subdivide the lots within the first stated boundary with a view to resident use, while those in the latter boundary were intended to be devoted to a service requiring more extended area. And it may be here added that the effort to bring to the immediate locality manufacturing institutions, employing agents or servants in their operations, may have been for the purpose of creating a special demand for the lots for residence purposes; but the streets, seven in all, named or numbered, between the blocks plotted within the boundaries of Ninth and Tenth avenues, run through. on straight lines, from Ninth to Eleventh avenues, thus cutting the strip in dispute in seven blocks, to the width of each street as judged from the map. This fact entirely destroys any possibility of real contention that the strip in controversy was, from end to end, a reservation by the land company. An inspection of the map leaves no room for doubt that the seven streets, named or numbered, extended continuously from beyond Ninth avenue at least to Eleventh avenue. There is nothing, save dots or dashes in the limits of the strip, that militates against the view that the named or numbered streets were intended to be unbroken for the distance stated. The presence of these dots or dashes cannot, rationally, overcome the plainly

manifested purpose to devote the spaces indicated, by the named or numbered streets, to public use, as such, and that for at least the distance, without hiatus, before stated.

In view of this fact alone, could it be reasonably concluded that reservations of the dissected, into eight sections, strip was intended by the then owner of the land? Laid off as this was, the negative is, it seems to us, the only answer. A demonstration of this is found, we think, in the fact that, if these reservations were intended, lot 2 in block 33a would be, on the face of the plotting, entirely without outlet. It is no answer to this to say that that lot may not have been intended to be disposed of alone, because, having separated it by number from the remainder of the block, it must be assumed on the status presented that the purpose was not to create a subdivision wholly without avenue of approach when such a means of ingress and egress was so easily afforded over the disputed strip on which only it has any frontage; the land behind it being, it appears, otherwise owned. Almost similar observations may be made of block 38a. The disputed strip is south of it, the Louisville & Nashville Railroad right of way west and north, and on the east, presumably, a street that, with the possible exception of a slight space, the width of which is not indicated by the map, does not reach Eleventh avenue.

These considerations, stated at perhaps too great length, lead to the result, we think, that, under the circumstances here present, dedication of land to public use may be accomplished without the designation eo nomine of the space as a street, highway, or alley. In other words, that, though a map or plat does not designate eo nomine the street, highway, or alley space in the area plotted, such designation may as certainly appear from the situation created by the relative location of blank spaces and lots or blocks and from the purpose to which the lots or blocks are expected to be devoted and

from the lines and courses indicated by the map as they relate to lines of the subdivisions made.—*Coe College v. Cedar Rapids,* 120 Iowa, 541, 547, 95 N. W. 267; *Indianapolis v. Kingsbury,* 101 Ind. 200, 51 Am. Rep. 749; *San Francisco v. Burr,* 108 Cal. 460, 41 Pac. 482.

Some of the testimony of J. H. Heineke bears directly on the issue. He testified, without objection; That he was connected as assistant secretary, and later as secretary, with the land company from its organization; that he was assistant secretary at the time the map was filed; that he was furnished the map filed to sell lots by it, and lots were sold by it; that the lots in the two tiers on either side of the strip were not sold, but were donated for "manufacturing purposes," the condition being that the company acquiring a lot or lots would erect a plant thereon; that a street (referring to the strip in dispute) was laid out between the half of the blocks on which was built a railroad track for the purpose of serving the industries located or to be located on that block; that the land company built the track connecting the two lines of railroad mentioned before; that the "method of exit from blocks 32a and 33a was over the Railroad street;" that what "I have called Railroad street" was used as a public highway by parties carrying products to and from their plants;" that the street was about 50 feet wide and only one track was built on it; and that what the witness called "Railroad street" bore no definite name on the map, but "we in the office generally called" that space by that name.

In opposition to the conclusion of fact naturally to be drawn from the considerations stated, the appellant first invokes the presumption against the dedication, without designation eo nomine, of the strip in question, since such an act would have, it is claimed, wrought the commission of a misdemeanor as provided in section 7

of the act approved February 28, 1887 (Acts 1886-87,
p. 95), which relates to the plottings of lands into town
lots. It seems to be well settled that statutory methods
whereby lands may be dedicated to public use do not
prevent the creation of such uses by common law dedi-
cation.—13 Cyc. pp. 440, 441, and notes. In *Thomas
v. Cowin,* 147 Ala. 478, 39 South. 898, it was ruled, un-
der the act cited above, that a violation of the penal pro-
visions thereof could not operate to affect the title of
an innocent (of the prohibited act) purchaser of one
of the lots. It was therein decided that the prohibition
and the penalty of the act are directed against the own-
er of the land. If, however, the evidential presumption
of innocence of a violation of a penal statute may be in-
voked on the issue in hand, it is only prima facie and is
of course rebuttable. It is, then, at most only an ele-
ment of the whole evidence to be considered along with
it, going to refute the insistence of an intention to ded-
icate the strip in question to public use.

For appellant four decisions of other jurisdictions are
presented in support of its contention that a space left
blank on a plat, with no designation of its purpose, does
not show an intention to dedicate to public use. We
will separately consider them. The first is *Coe College
v. Cedar Rapids,* 120 Iowa, 541, 95 N. W. 267. Upon
the general conclusion in the case it will be noted that
two of the six members of the court dissented and
grounded their view, on the facts, upon very strong
reasoning. Even in this case, cited by us above on this
point, the majority declare that "the intention to dedi-
cate must appear, and this may sometimes be inferred
from the shape of the land, its situation, dimensions,
and the like." However, the majority were evidently
controlled by a strict application of the pertinent stat-
utes of the state of Iowa, presumably ignoring the rule
that statutory modes of dedication do not affect
to prevent dedication, if accepted, by acts suffi-

cient therefor at common law. *Oswald v. Grenet,* 15 Tex. 118, which, by the way, is from the pen of a former Chief Justice of this court, may be distinguished, in point of fact, from the case at bar in these particulars: First, the effort was to show a dedication of a triangular space as a common; second, the space was bounded by three named streets; and, third, that the testimony of the surveyor showed that set stakes covered with sand were found at the different corners of the alleged common, and that they left a space of about the width of a street around it. While a common may be desirable, as it is, in populous communities, its necessity cannot approximate that of streets as means of ingress and egress to and from the lots or blocks created. In *Echuman v. Borough of Homestead,* 111 Pa. 48, 2 Atl. 407, where a plat had been made and lots sold attingent to Monongahela river, the three lots in controversy being between a street parallel with the river, and the river, the court said: "It is reasonably certain that the Homestead Bank & Life Insurance Company (the alleged dedicator) dedicated the land to the public, and that a number of persons purchased lots expecting to enjoy the resulting advantage. However, nothing in the plan, or in the course of title, or on the ground, was a warning to Ormsby Phillips of such dedication, and therefore he acquired a good title." It is evident from the quotation as well as from the full report of the case, that the decision turned upon the application, on favor of Phillips' successors in right, of the doctrine of bona fide purchaser, etc. We merely state this phase of the holding without reference to its soundness. The last decision, of the four referred to before, is *Mayor of New York v. Stuyvesant,* 17 N. Y. 34. Without restating the question of construction of the deed there under consideration, it will suffice, for the purpose of showing the want of its application to

the case at bar, to note that a prominent reason given by the court, in that case, for holding that Nicholas Stuyvesant, the original owner, never intended by his conveyance to dedicate the space in controversy, was that it was covered by buildings, excluding any idea that other purchasers had bought with faith in a dedication of land so incumbered.

In the year 1888, at the time of the conveyance of some of this plotted land to the Birmingham Machine & Foundry Company, one of the defendants, the land company, made a contract with that company in which the use, in perpetuity, of the "service track" of the land company, was assured the foundry company. In the conveyance to this company the property was, in part, described as extending to "the right of way of service line of railroad of the party of the first part." The property was otherwise described as blocks 36 and 38B. We do not think this description, in the deed, or the contract itself, sufficient to overcome the effect of the dedicatory act, under the circumstances summarized, of plotting the area and filing it in July, 1887. If the land company effected a dedication upon the filing of the map, and thereafter made disposition of the plotted property with reference to such map, whatever it may have written in contracts or deeds could not avail to restrict the dedication already accomplished. On the other hand, the acceptance by some purchasers of deeds referring to the "right of way of the service track," or entering into contracts with reference to the use in perpetuity of such "track" could not, after dedication effected, affect to qualify the dedication.

Upon review of the whole case, and the numerous considerations urged in argument of the solicitors, we are of the opinion that the strip in controversy was dedicated as indicated, and hence the complainant is estopped to assert any right or title to the strip inconsistent

with the public easement created by the dedication to public use. The respondents' rights in the strip, including the "track," are, of course, those consequent upon such an act.

The decree appealed from is not in accord with the conclusions stated, and it is therefore reversed upon the cross-appeal of the appellees on the main appeal; and the court below will enter a decree declaring the rights of the respondents in the premises to be those consequent upon a dedication of the land described in the bill to public use as a highway or street, and dismissing the bill. The appellant takes nothing by its appeal.

Reversed and remanded on the cross-appeal, with directions to the lower court.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.