(85 South. 516)

## CITY OF FLORENCE v. FLORENCE LAND & LUMBER CO. et al.   (8 Div. 222.)

(Supreme Court of Alabama.   April 8, 1920.)

1. **Dedication** ⬤⟹41—**Must be clearly evidenced.**

A party who asserts that land has been dedicated to public use has the burden of establishing the dedication by clear evidence of unequivocal acts indicating owner's intention to create a public right exclusive of his own.

2. **Dedication** ⬤⟹19(5) — **Park dedicated by sale of lots with reference to plat showing park.**

Where owner platted land surrounding certain tract, which it designated as a "park," the sale of lots with reference to the plat effected a dedication to the city of such tract as a public park.

3. **Dedication** ⬤⟹31—**Sale of lots with reference to plat constitutes a complete acceptance of dedication.**

A complete acceptance of intended dedication of highways, parks, and commons is ac-

complished, when the owner sells a lot with reference to a. map or plot wherein highways, parks, or commons are definitely indicated or designated ·as being assigned to the public use.

**4. Dedication** ☞19(2)—**Markings descriptive of land as streets, parks, and commons on plat not essential.**

It is not essential to the dedication of areas to the public use for streets, parks, or commons that any written markings so descriptive of such areas, or of the map or plat showing them, should be made on the map or plat.

**5. Dedication** ☞19(5)—**Land platted as park, with intent that monument be constructed therein, dedicated, though monument was constructed elsewhere.**

Where owner platted land surrounding a tract designated as "Monumental Park," the sale of lots with reference to such plat constituted a dedication of the tract, though owner had planned on having monument to Confederate soldiers constructed therein, and in fact monument was constructed elsewhere.

**6. Dedication** ☞63(2)—**Park not abandoned by failure to use.**

An unrestricted dedication of an area as a park, by sale of lots with reference to map showing such a park, was not lost to the public by the municipal authorities' inattention to. the improvement or care of the park, however long it 'was so neglected.

Appeal from' Circuit Court, Lauderdale County; C. P. Almon, Judge.

Bill' by the City of Florence against the Florence Land & Lumber Company and another to enjoin the destruction of Monumental Park, alleged to have been dedicated to a public use. From a decree for respondents, complainant appeals. · Reversed and remanded, with directions.

See, also, 199 Ala. 580, 75 South. 19.

Bradshaw & Sims and Mitchell & Hughston, all of. Florence, for appellant.

See former reports of this case in' 199 Ala. 580, 75 South. 20, and 193 Ala. 179, 69 South. 109. There was a common-law dedication under 'the evidence and allegations of the' bill. ; 4 McQuillin, Mun. Corp. p. 3234; 70 Ala. 594; 93 Cal. 43, 28 Pac. 839, 16 L. R. A. 147; 172 Ala. 56, 55 South. 189; 165 Ala. 630, 51 South. 821; 160 Ala. 461, 49 South. 448; 174 Ala. 326, 56 South. 716; 152 Ala. 334, 44 South. 588; 22 Tex. 94; 160 Ala. 461, 49 South. 448; 47 Ky. (8 B. Mon.) 232. There was also a statutory dedication, and the court erred in dismissing complainant's bill. Authorities supra.

S. W. Frierson, of Florence, for appellees.

If the bill presents a case of statutory dedication, the facts take it clearly without the operation of our statutes. Section 6028 et seq., Code 1907, and authorities there cited; 67 Ill. 543; 4 Paige (N. Y.) 510, 27 Am. Dec. 80; 7 Ohio, 217, pt. 1, 28 Am. Dec. 641; 84 Ala. 215, 4 South. 153; 13 Cyc. 442; 66 Ala. 80; 122 Ala. 179, 27 South. 303; 87 Ala. 220, 6 South. 50.

McCLELLAN, J. The ultimate object of this bill is to have determined whether a. plot of land in Florence, Ala., commonly called Monumental Park, was dedicated, in 1887–88, to the public use by the Florence Land, Mining & Manufacturing Company, a corporation then owning this tract, with ' other adjacent lands, and to the title to which the Florence Land Company, the appellee, has succeeded, if its dedication was not effected.

[1] The burden to establish a dedication to public use is on the party asserting it, and to establish a dedication the "clearest intention" on the part of the owner to effect a dedication "must be shown." Attorney General v. Lakeview Land Co., 143 Ala. 291, 297, 298, 39 South. 303. To discharge this burden of proof the evidence must be clear and cogent, and the acts of the owner relied on to establish a dedication must be convincing of an intent to dedicate the property to public use, and such acts must be unequivocal in their indication of the owner's. intention to create a public right exclusive of his own. 8 R. C. L. pp. 890, 891; 18 Cyc. p. 476; Attorney General v. Lakeview Land Co., supra.

[2] A careful review of the whole evidence convinces this court that a dedication to public use of the land described as Monumental Park was accomplished by the Florence Land, Mining & Manufacturing Company in 1887–88. That during these years 'the Florence Land, Mining & Manufacturing Company platted its lands surrounding this Monumental Park into numbered urban blocks and lots, and laid out streets thereon, is fully proven. That during those years. lots were sold by this company with reference to the company's platting of its lands surrounding Monumental Park is likewise 'fully established. Such acts of the owner of land, and the purchase, as here, of lots with reference to the platting thereof, effect a dedication to public use of the highways,. parks, or commons shown by the map or plat· to be so intended by the owner. East Birmingham Realty Co. v. Birmingham Mach. Co., 160 Ala. 461, 466, 467, 49 South. 448; Roberts v. Mathews, 137 Ala. 528, 34 South. 634, 97 Am. 'St. Rep. 56; 8 R. C. L. p. 894; Moragne v. Gadsden, 170 Ala. 124, 54 South. 518; Weger v. Delvan, 61 N. J. Law, 224, 39. Atl. 730; Rowan v. Portland, 47 Ky. (8 B. Mon.) 232.

[3] A complete acceptance of such intended dedication of highways, parks, and commons is accomplished when the owner sells a. lot or lots with reference to a map or plat'

---

whereon highways, parks, or commons are definitely indicated or designated as being assigned to the public use. Authorities supra; Highland Realty Co. v. Avondale Land Co., 174 Ala. 326, 332, 56 South. 716, citing earlier decisions of this court, and approvingly quoting Elliott on Roads and Streets, § 132, to the effect that a map or plat so used by the owner in the sale of one or more lots is "regarded as a unity," embracing in the general scheme or plan all areas designated thereon as being assigned or devoted to the public use.

[4] It is. not essential to the dedication of areas to the public use for streets, parks, or commons that any written markings, so descriptive of such areas, or of the map or plat showing them, should be made on the map or plat. 4 McQuillin on Munic. Corp. p. 3234; East Birmingham Realty Co. v. Birmingham Mach. Co., 160 Ala. 461, 467, 49 South. 448; Moragne v. Gadsden, 170 Ala. 124, 133, 54 South. 518; 8 R. C. L. p. 896; Morrow v. Highland Grove Co., 219 Pa. 619, 69 Atl. 41, 123 Am. St. Rep. 677, 680; note, 23 L. R. A. (N. S.) 811–813; Rowan v. Portland, supra; Weger v. Delvan, supra. In caution we repeat: While words of designation on such map or plat of an area as a street, park, or common are not essential to the effectual dedication thereof to the public use, yet it must be made clearly to appear that the owner intended to invest the public with the right to the use of the land.

There are before this court three maps purporting to show the property of the Florence Land, Mining & Manufacturing Company. To no other source or authority can these maps be attributed than to this company; and likewise must their delineations be ascribed to the directions of the company, the then owner of the land. All of them delineate blocks, lots, and streets in the company's land surrounding the tract called Monumental Park. The first, in order of definite date, is the map which bears the dating "Florence, Ala., March 31, 1887," purporting to be made by "Charles E. Boeckh" and "Fred Haaf, Del."; the former being the engineer of the company. While the square in question is not marked in words indicating a park or public ground, yet characters appear in its area that are similar to and consistent with those imposed on the area marked "Cemetery" on this map, and with those imposed on the area marked "Wildwood Park" on this map. The square in question was divided and platted into eight segments, separated by what appears to be walkways, leading to a circular design in the center of the square. Undoubtedly this map manifested an unmistakable intention to assign this square to a different purpose from that shown by the platting of the blocks, lots, and named streets about this square. There is nothing on this map .to indicate an intent on the part of the owner to reserve this , square, which, as stated, was not treated on this map as blocks or lots to be offered to purchasers.

Another of the three maps mentioned is dated "1888." It purports to have been prepared by "Chas. Boeckh, C. E.," and "M. A. Kirby." And the third map is—so far as this section of Florence is concerned, and for its bearing on' the present inquiry—a duplicate of the Boeckh-Kirby map of. 1888. These two maps are colored. On both of them the square in question is platted into angular, though symmetrical, plots and walkways, and it is marked Monumental Park in plain letters. There are three colors on these maps, and these colors are explained in terms set opposite an example of the respective colorings. The explanation refers the parts in pink to "Property Belonging to the F. L., M. & M. Co.," the owner; the parts in blue to "Railroad Right of Way, etc."; and the parts in green to "Parks and Public Grounds." . The area marked "Monumental Park" is in green, which constituted these maps the medium for expressing, in unmistakable form, the owner's intent to assign Monumental Park to the public use.

It is proven that sales of lots were made by the company in accordance with the general scheme and plan pictured by and defined on these maps. In describing the property conveyed to purchasers by the deeds in the record, express reference is made to a recorded map prepared by Boeckh, the same engineer who prepared the three maps to which reference has been made. This recorded map carries the certificate of Boeckh under date of January 25, 1888. It was a sectional map, consisting of more than 25 pages, and was, as stated, filed in the probate office of Lauderdale county on February 18, 1888. The witness Smith has prepared a reproduction of this recorded map, showing the relation, in part, of the land here in suit to blocks numbered 445, and 457. These two blocks are likewise numbered on the Boeckh-Kirby maps to which reference has already been made. It is manifest from this that, while the area in question is not in any way indicated or designated by the recorded map as a park, yet the designation of the adjacent blocks on the recorded map corresponds with the designation of the adjacent blocks shown on the colored maps prepared by Boeckh and Kirby.

When this reproduction, by the witness Smith, of the recorded map, is considered in connection with the entire evidence and the three maps hereinabove mentioned, it is certain that all of them were but expressions of a like design to constitute as such what is actually designated on the Boeckh-Kirby maps as "Monumental Park"; and it is equally certain that there was no manifestation by the recorded map of a purpose to qualify

or refute the plain intent, shown on the face of the four maps before mentioned, with respect to this square. This view is further confirmed by reference to a map on the back of a letter sheet, the side for writing bearing this company's corporate name and the names of its officers. It was proven to be the stationery of the company. This map bears the names of "Chas. Boeckh, C. E.," and "M. A. Kirby, Del.," followed by the date "1888." On this map the square in question is marked "Monumental Park," and within its area there is platting of segments and what appears to be walkways similar, in general effect, to the designs and characters shown on the three maps before described.

Ascribing to the three maps first noted and to the map on the back of this company's stationery the authenticity the evidence requires, the testimony of the witness Weakley, to be presently quoted, is afforded forceful corroboration, against the according of credit to which opposing testimony is not sufficiently convincing to neutralize its effect. He testified:

"I was present when the lots on Magolia street bordering on Monumental Park were offered for sale. These lots were sold with reference to the plat, which I have identified as the first map of the land company subdivision. A number of these lots were sold, but I cannot recall the names of the purchasers. It was stated at the time by the auctioneer, and by those who were present purporting to speak for the land company, that a public park had been laid out on the hill, to be called Monumental Park, and this fact was cited as a reason why lots in this locality would be more valuable."

The witness Campbell testified that he attended the sales to which the witness Weakley referred, and, in respect of the auctioneer's statement, that he did not "hear anything of the kind." This statement of Mr. Campbell is negative in form, at least, and lacks the quality of positive, excluding denial. The witness Spurr, responding to a question touching the statement attributed to the auctioneer by the witness Weakley, said:

"I was present at the sale, but I do not recall such statements from the auctioneer"

—thus expressing a character of denial even less positive and excluding than that given by the witness Campbell. Considering the whole evidence, this court does not feel warranted in discrediting the quoted testimony of the witness Weakley, nor justified in minifying or qualifying its probative force. It undoubtedly consists with the natural probabilities consequent upon the design and intent of the company as that is authentically portrayed on the four maps to which reference has been made.

[5] The evidence of chief significance inviting a contrary conclusion on the issue of dedication vel non of this piece of the larger area owned by this company is that furnished by the established facts that this company, during the period in which these maps were prepared and exhibited, proposed to or negotiated with the Ladies' Memorial Association of Florence to donate the area in question as a place in which to erect a Confederate monument that that organization had in contemplation, or had begun to erect, in the courthouse yard in Florence; this location for such a monument being favored because it was the site of a Confederate fort in the '60's and because of the commanding view its elevation afforded. The use of the word "Monumental," in referring to this square or area, is to be attributed to these negotiations or to this proposal. A Confederate monument was not erected on this land; it was erected, by this association of the ladies, on the courthouse grounds in Florence.

According to this fact every reasonable effect and consequent intendment, this court cannot attribute to this circumstance the effect to refute the entertainment by this company of the dedicatory intent unmistakably manifested upon the maps to which we have alluded—an intent that is further shown to have been entertained by the testimony of the witness Weakley. The inspiration of this company's desire to donate the area called "Monumental Park" was doubtless the most worthy sentimental consideration, to which the witnesses refer, viz. a motive to contribute to the appropriate honoring of our Confederate dead. It is also readily conceivable that this company anticipated some material, not sentimental or patriotic, benefit and advantage to accrue to it from the donation of the area in question; the company being then engaged in developing that theretofore undeveloped section of Florence and in selling its platted property for its own profit. But when this company prepared and promulgated the maps mentioned it neither indorsed thereon nor otherwise indicated an intent to alone donate Monumental Park to the Ladies' Memorial Association, or to condition the effectiveness, accomplishment, or acceptance of the donation upon the erection of a Confederate monument in Monumental Park. This company was content to set forth its intent in the premises without coincident limitation, condition, or qualification, even on the sectional Boeckh map that was recorded in the probate office of Lauderdale county.

There is, therefore, no irreconcilable inconsistency between this map, evidence of the deliberate intent unconditionally to dedicate this area to the public use, and the evidence disclosing a proposal or negotiation to donate the area as the contemplated site of a Confederate monument; the latter serving,

as in all probability it did, to suggest and promote the unconditional dedication of the area, in the beautified and cultivated center of which the contemplated Confederate monument, occupying but a small part of the square, might be raised.

[6] It is hardly necessary to add that this unrestricted dedication of Monumental Park has not been lost to the public by the delayed or entire failure of the municipal authorities to accept it, the sale of lots having accomplished an acceptance, or by their inattention to its improvement or care, however long it was so neglected by the municipal authorities. Webb v. Demopolis, 95 Ala. 116, 134-137, 13 South. 289, 21 L. R. A. 62, among others in its line.

The decree appealed from gives effect to an erroneous conclusion upon the evidence under the law. It is reversed. The cause is remanded, with directions to award the complainant the relief prayed in the amended bill.

Reversed and remanded, with directions.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.