# Rudolph *v.* City of Birmingham.

*Bill to Remove Obstruction from Street.*

(Decided June 3, 1914. Rehearing denied July 2, 1914.
65 South. 1006.)

1. *Municipal Corporations; Annexation and Merger; Effect on Pending Action.*—Under section 1159, Code 1907, where pending a suit by the city of Elyton, that city became a part of the city of Birmingham, the court properly ordered on motion that the suit proceed in the name of the city of Birmingham, although ordinarily the rule is that where the entire interest of the sole complainant in a suit passes to another by assignment or otherwise, the assignee claiming by a title that may be litigated must seek relief by an original bill in the nature of a supplemental bill, or by bill of revivor.

2. *Same; Streets.*—Where a city took a highway in territory incorporated into a city as it exists within law and fact at the time of such incorporation, its location in law and in fact was not affected by an encroachment thereon by an abutting owner.

3. *Statute; Construction; Retro-active Operation.*—While Acts 1889, now section 2899, et seq., Code 1896, was a curative statute, and provided among other things, a retrospective rule of evidence, yet its principal purpose was to prevent the sale of lots described by reference to maps or plats unless such maps or plats had been recorded, and as to this purpose, it was without retrospective operation.

*4. Estoppel; Grounds; Recital.*—Owners of land who conveyed it by deeds describing it as bounded on a public highway, irrevocably recognized the highway as a public highway.

*5. Dedication; Evidence; Weight and Sufficiency.*—The evidence examined and held to show a dedication of such road as it then existed, prior to the erection of the obstruction therein by the then owner of the land.

*6. Same; Sale of Lots by Reference to Maps.*—Both at the present time and prior to the enactments of the Act which became section 3899, et seq., Code 1896, an owner who made a map or plat of land which spaces thereon indicating roads or streets, and sold lots with reference thereto, dedicated such spaces to the public, leaving them to be opened as streets or roads by the proper local authorities when the public interest required it and such dedication was irrevocable except by legislative enactment.

*7. Highways; Width; Establishment.*—Section 5768, Code 1907, does not forbid the establishment of roads more than thirty feet in width.

*8. Same; Authority of Commission.*—With reference to the establishment and change of public roads, the boards of county commissioners exercise a quasi legislative authority, which other tribunals will not revise or control, unless its action is productive of injury to or interferes with the property rights of individuals.

*9. Same; Record.*—Official action with reference to the location or change of public roads should be shown by the proper record of the boards of county commissioners.

*10. Same; Encroachments; Limitation.*—The acts of county authorities in suffering structures encroaching on a road to remain undisturbed many years, and in caring for the road as limited by such encroachments, did not estop them at any time from re-establishing the public right to the use of the road as defined by actual use prior to such encroachment; limitations do not run against the right of the public in highways, and a mere non-user of part of a highway for any length of time will not operate as an abandonment.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by the city of Birmingham against Z. T. Rudolph for mandatory injunction to require respondent to remove certain obstruction alleged to be maintained by him in a public road. Decree for complainant and respondent appeals. Affirmed.

HENRY UPSON SIMS, for appellant. The court erred in making an order substituting the city of Birmingham for the city of Elyton and letting the suit proceed in that name.—*Pitts v. Powledge,* 56 Ala. 147; Sims. Ch.

§ 351. The Georgia road was not a public road as averred in the bill.—*Gadsden v. Williams,* 151 Ala. 592; *Cockran v. Purser,* 152 Ala. 354. Where land is described as bounded by the road, it goes to the center of the road.—*Evans v. S. & W. Ry. Co.,* 90 Ala. 54. Where the land across the road was not plotted, the ownership of the grantee goes across the road.—*Wes. Ry. v. Ala. Grand Trunk,* 96 Ala. 272; *Perry v. N. O. & M. Ry.,* 55 Ala. 424. The width of a road is thirty feet or less, and the statute governs.—*McDade v. State,* 95 Ala. 30; Malf. Dig. p. 786; § 1130, Code 1852.

ROMAINE BOYD, and M. M. ULLMAN, for appellee. A mapping and platting of lands, and the sale of lots amounts to a complete and irrevocable dedication of the lands thereon shown and delineated as public highways. —*Reed v. Birmingham,* 92 Ala. 339; *Webb v. Demopolis,* 95 Ala. 116. Where land is described as bounded by a road, it goes to the center of the road but subject to the public easement.—*Evans v. Savannah & W. Ry.,* 90 Ala. 54. By virtue of the statute in force the court properly permitted the case to proceed in the name of the city of Birmingham.—§ 1159, Code 1907. A public highway established by prescription or adverse user can only be abandoned in the method prescribed by the statute.— § 5771, Code 1907.

SAYRE, J.—Originally the bill in this case was filed by the city of Elyton against appellant, and sought a decree requiring appellant to remove certain obstructions alleged to have been maintained by him in a public street of the complaining municipality known as the "Georgia Road." Some objections to the bill were disposed of in *Rudolph v. Elyton,* 161 Ala. 525, 50 South. 80. Pending a final decree the city of Elyton became a

part of the city of Birmingham, after which the city of Birmingham moved the court to allow the cause to proceed in its name. It was so ordered, and appellant assigns the ruling for error. Ordinarily, if the entire interest of a sole complainant passes into another by assignment or otherwise, the benefit of the proceeding, when the assignee claims by a title that may be litigated, must be sought by an original bill in the nature of a supplemental bill or bill of revivor.—Sims' Chan. Pr. § 617. But the Municipal Code Law provided differently for cases of the kind here shown. Dealing with the subject of the annexation and merger of contiguous municipalities, the Code provides that: "All suits pending in any court on behalf of any city or town so absorbed, or whose government is extinguished, may be prosecuted or defended in the name of the city or town whose boundary lines shall be so altered or rearranged."—Code, § 1159.

This provision contemplates the uninterrupetd prosecution of pending suits, and justified, required, the course adopted by the chancery court.

For more than 50 years the Georgia Road has been used by the public as a highway. We have no record of how or by whom or what authority it was originally laid out, but it may be inferred that it was located with a view to its practical coincidence with the township and section line. Whether it was intended to lie on both sides of that line, or wholly to the north of it, is uncertain, and, in our view of the case, immaterial, though the parties seem to attach some importance to the fact. That there has been such a road during this period is not denied. The difference between the parties relates to its northern boundary line. Prior to 1907, when it was incorporated into the city of Elyton, this road was worked and kept in repair by the county authorities,

but, like many roads through rural districts, it was of irregular width and at places its boundary lines were illy defined. As some of the witnesses state the facts, the land along the road in that neighborhood was not very valuable, and was indiscriminately used by the public for convenience in passing and traveling, and no particular lines or limits were made except where it was cultivated. This much, however, is certain, that defendant's property right is limited on the south by the northern boundary of the road, wherever that of right must be located, and that for many years prior to 1889 a line between the road and the property now owned by defendant was quite distinctly located and defined as being at the place where it has been located by the chancellor's decree in this cause. As now defined by fences and other structures erected by property owners on either side, and as it has been used by the public since 1889, this road is more than 30 feet wide, and is now substantially as it was when incorporated into the city of Elyton.

Complainant (appellee) contends, as for one maintainable aspect of its case, that the evidence tending to show a long-continued adverse user by the public prior to 1889 is sufficient to establish as of that period an original dedication or prescriptive right in the public to a road with its northern limit at the point in question as it was then used and defined. This may be so, but, considering the facts already stated in connection with evidence to which we shall presently come, we prefer to place our conclusion upon a more specific act of dedication and its acceptance by the public.

In 1885 Margaret Walker owned the land to the north of the township or section line along which the Georgia Road ran. April 24, 1889, she conveyed to Elgin M. Thweatt land described as follows: "Commencing at a point on the south side of 2nd avenue north one hundred

seventy-five (175) feet southwardly from the southwest corner of the intersection of 7th street and 2nd avenue north, thence southwardly and parallel with 7th street to the north side of the Georgia Road, thence westwardly along the north side of said Georgia Road to where the south side of 2nd avenue, north, intersects with the north side of said Georgia Road, thence eastwardly along the south side of 2nd avenue, north, to the point of beginning."

By a like description Thweatt conveyed to J. E. Pauley May 11, 1901, and Pauley to defendant January 19, 1903. It is thus to be seen that defendant and his predecessors in title mentioned above have irrevocably recognized the Georgia Road as a public highway, and the only point of difficulty lies in the definite location of the northern limit of the road where it passes below or in front of defendant's property.

In 1889, and for many years before, the northern boundary of the roadway in actual use, where it passed along the front of the property now owned by defendant, and where also it approached a fork in the road a little to the west, veered to the north, away from the township or section line, and was apparently defined by a worm rail fence in the corners of which trees had grown to considerable size. Just outside of this fence, i. e., between the fence and the traveled roadway, there was a declivity of two or three feet, where the roots of the trees had been exposed by the washing and wearing away of the traveled surface of the road. Ordinarily passing vehicles went within 10 feet of the trees, unless the road was muddy, and then they went closer. Thweatt, during the time he owned the property, during the first year of his ownership probably, built the fence and the small houses complainant would now have removed, thus extending his inclosure some 10 or 20 feet to the south of the line

marked by the worm fence and the trees. It is our opinion that in so doing he transgressed the limits of the property right he had acquired, and encroached upon a highway that had been dedicated to the public by his immediate predecessor in title.

The parties have agreed that defendant is "the owner of the land commonly known as lots 6, 7, and 8, and the W. ½ of lot 5, in block 352, according to the map, plan, and survey of certain land situated in the S. E. ¼ of the S. W. ¼ of section 35, township 17 south, range 3 west, and known as the Margaret Walker addition to Birmingham, a description of said land as same was conveyed to respondent and to his predecessors in title, being as follows," to wit, the description used in the deeds to Thweatt and his successors. This agreement, and the description by which the property in question has passed from Margaret Walker down to defendant, make it entirely clear that defendant holds a title which depends for proof upon a map, plan, and survey of that part of S. E. ¼ of S. W. ¼ of section 35 in which his property lies, showing the Georgia Road and other streets and avenues. In 1891 such a map and plat was made, acknowledged, and adopted by Margaret Walker, and recorded in the office of the judge of probate. With and as a part of this map was recorded a certificate as follows: "I hereby certify that the accompanying map is a correct and true plat and map according to a resurvey and a measurement made by me during the month of November, 1886, of the property of Miss Margaret Walker as it was then laid off, many of the lots having been sold according to said plan, as herein on said plat described, said survey being a subdivision into lots, streets, avenues, alleys and blocks as appear from said names of streets and avenues and measurings of same appearing thereon. Given under my hand this May 6, 1891. Jas. C. Long, Civil Engineer."

In 1902, a similar map, known as the School Map of Margaret Walker's addition to Birmingham, was made, adopted, and recorded by R. H. Hagood, administrator of Margaret Walker, then deceased. These maps or plats, in and of themselves, did not circumscribe defendant's property by their implied dedication of the public streets and highways thereby shown, because Thweatt, who stood in the chain of title between Margaret Walker and defendant, had purchased before their recordation. However, they showed the Georgia Road, and that road, as it is there laid out, along with Second avenue and Seventh street, incloses a triangular space like unto the space inclosed by these ways as they now appear on the ground. The map of 1889, drawn to a larger scale than the map of 1891, shows a subdivision of the said triangular space into lots numbered 5, 6, 7, and 8, among others, these lots running through the space and fronting on both Second avenue and the Georgia Road. At that point also the northern limit of the Georgia Road shows on both these maps the same divergence from the township or section line as the worm fence with its growth of trees and its attingent and parallel declivity down to the traveled road, to which we have above referred. Evidently it was the intention of the owner of the property and the makers of these maps to recognize and perpetuate the Georgia Road as it was then and for many years had been marked and located by use on the surface of the ground, and evidently defendant and his predecessors back to Margaret Walker had purchased with reference to some such map, or with reference to the Georgia Road, Second avenue and Seventh street as these ways were at the time marked and located upon the surface of the ground by monuments or indications of property lines and boundaries, most likely with reference to both.

We have said that these maps in and of themselves

did not bind Thweatt or defendant by the dedication of the Georgia Road shown thereon. But the certificates written upon the map and plat of 1891 indicate the fact that it was prepared and recorded in pursuance of section 6 of the act approved February 26, 1889 (Acts 1888-89, p. 53), section 3904 of the Code of 1896, section 6033 of the Code of 1907. This law provides that in cases where lands have been divided into lots prior to the 26th day of February, 1889, and the map or plat thereof lost or mislaid, and a part or all of the lots indicated therein have been sold, the owner thereof may cause a new survey to be made and a plat or map to be made therefrom, or reproduce the one lost, from survey already made, as required by section 2899 of the Code, certified, acknowledged, and recorded as therein required, and which shall have the same effect in all respects as plats or maps recorded under that section. The last-named section requires that a plat or map shall be made of lands divided into town lots. Section 3900 requires that such plats or maps shall be signed by the owner, acknowledged, and recorded, together with the certificate of the surveyor and of acknowledgment, after which they may be used in evidence to the same extent and with like effect as in the case of deeds. Section 3901 provides that the acknowledgment and recording shall be held to operate as a conveyance in fee simple of such portions of the premises as are intended for streets, alleyways, avenues, or other public use, and the same shall be held in trust for the uses and purposes indicated. The entire purpose and scheme of the statute discloses a clear implication that the provisions of sections 3900 and 3901 shall apply in the case of a new survey or the reproduction of a lost plat or map.

The act of 1888-89 was in fact a curative statute, and provided, among other things, a retrospective rule of evi-

dence. The legislative competency to enact it, or the propriety of its invocation in this case, cannot be denied. —*Brannan v. Henry,* 175 Ala. 454, 57 South. 967. But the leading purpose of the act was to prevent the sales of land lots described by reference to maps or plats unless such maps or plats have been recorded. As to that, it had, of coures, no retroactive effect. Before the act the law was that an owner who made a plat or map of land on which spaces were left indicating roads or streets, and sold lots with reference thereto, made his dedication of such spaces to the public conclusive, and left the streets or roads to be opened by the proper local authorities at such time as the public interest in their judgment might require.—*Western Ry. Co. v. Alabama Grand Trunk R. R. Co.,* 96 Ala. 272, 11 South. 483. 17 L. R. A. 474; Elliott on Roads & Streets, § 129. Such is also the law at this time, even though the map by which lots are sold is not recorded.—*Thomas v. Cowin,* 147 Ala. 478, 39 South. 898.

We are satisfied that the maps of 1891 and 1902 are substantial reproductions of the map of 1885, and the evidence of these maps and the coincidence of the location of the northern boundary of the Georgia Road as there shown with the actual location of the traveled road for many years before is ample to establish the fact that there was, prior to Thweatt's purchase, a dedication by Margaret Walker of the Georgia Road as shown by the maps, which became at that moment, or earlier, if there were earlier sales, irrevocable and indefectible save by legislative authority.—*Webb v. Demopolis,* 95 Ala. 116, 13 South. 289, 21 L. R. A. 62; *Reed v. Birmingham,* 92 Ala. 339, 9 South. 161; *Alabama Grand Trunk R. R. Co. v. Western Ry. Co., supra.*

The evidence shows that during the period from 1891 to the incorporation of Elyton in 1907, the county au-

thorities macadamized, worked, and cared for the Georgia Road as it was then and is now defined by the inclosure of defendant and other attingent owners. In connection with this fact defendant cites *Oliver v. Loftin,* 4 Ala. 240, in support of the proposition that there was an authoritative location and confirmation of the road within the limits so defined, and the fact that the road way as thus defined exceeds 30 feet in width is supposed to add force to this argument.

Since 1852 30 feet has been laid down by the statute as the width of a public road of the first class. Roads of the second and third classes are not so wide.—Code, § 5768. But there has never been any inhibition against roads of a greater width, and "the continuous course of decision from an early day has been that the court of county commissioners in reference to the establishment and change of public roads, exercises a quasi legislative authority, which other tribunals will not assume to revise or control, unless its action is productive of injury to, or interference with, the rights of property of individuals."—*Commissioners' Court v. Hearne,* 59 Ala. 371. Such is now in effect the declaration of the statute.— Code, § 5765. Official action in reference to the location or change of public roads should be shown by the proper record of the commissioners' court. There is no record of any action by the court at any time in respect of the location or change of the road in question. The parol proof goes only to show that subsequent to the time of Thweatt's encroachment, the county authorities suffered the encroaching structures to remain undisturbed, and cared for the road as thus defined until its incorporation into the city of Elyton.

Considering whether prescription or the statute of limitation should run against the rights of the public in rural roads, it is said, in Elliott on Roads and Streets,

that: "There can, in principle, be no distinction between county roads and city streets, for in both cases the highways are held by the local organizations as governmental agencies. The truth is that the ownership of all highways, as highways, is in the state, and it is a departure from principle to apply the statute of limitations to highways, no matter what governmental corporation may have immediate control of them. In the local control of the highways we find the state acting through its agents, but never parting with the ultimate control nor with the proprietary right."—Volume 2, p. 769, note; Idem, § 488.

The rule of this court in regard to urban streets is stated in *Webb v. Demopolis,* and *Reed v. Birmingham, supra,* and other cases that might be cited. We think the same rule should obtain in case of rural roads.

It follows from what has been said that there was nothing in the statute classifying public rural roads, nor in the indulgence of the encroachment by Thweatt and his successors, to estop the county authorities at any time previous to the incorporation of the city of Elyton to re-establish the public right to the use of the road as it had been long defined by actual use prior to Thweatt's deed, which, on the other hand, estopped him and his successors to deny that right in the road as then used and defined.

In *McCain v. State,* 62 Ala. 138, where the corporate authorities of the town of Anniston were indicted for failing to keep in repair a certain road through territory which had been taken into town, it was said: "A town, created and incorporated as this was, out of rural territory, having, perchance, its public roads adapted to its wants and convenience as a rural community, cannot be bound by any principle of law to adopt and keep up, as a public street, every public road or highway that

may have been in use before the change. Nor could a property holder, by dedicating a portion of his soil to the public as a street, compel the corporate authorities, against their consent, to adopt it and keep it up as a street, when the convenience of the public, or the growth and expansion of the town, did not call for such new street."

Defendant places some reliance upon the case. We are unable to see that it helps the defendant, for here the municipal authorities, so far from failing to discharge their public duty in the premises, are by this bill asserting the public right and insisting upon a restoration of the original boundaries of the Georgia Road as shown by its long use, and the plat of 1885, with reference to which, as the evidence goes to show, the defendant and his predecessors purchased.

"Roads and streets are frequently laid out or dedicated with reference to future requirements, as well as with reference to the existing condition of things, and it is not just to assume that because all of the way is not used by the public or by the abutter it has been abandoned."— 2 Elliott, § 1175.

"Until the time arrives when any street or part of a street is required for actual public use, and when the public authorities may be properly called upon to open it for the public use, no mere nonuser, of any length of time, will operate as an abandonment of it, and all persons in possession of it will be presumed," as in favor of the public, whatever may be the rights of abutters, "to hold subject to the paramount right of the public."— *Reilly v. Racine*, 51 Wis. 526, 8 N. W. 417, quoted in note to section 1175, supra.

This is the doctrine of our cases.—*Webb v. Demopolis*, and *Reed v. Birmingham, supra*.

When the Georgia Road was incorporated into the city of Elyton, the municipality took it in its condition

[Harris v. Jones, et al.]

in fact and law existing at the time of its inclusion, as defendant insists. But its condition and location in law and fact were determined, not by the encroachment of defendant and his predecessors claiming under Margaret Walker, but by the long prior use of the road and the muniments under which they held, and these, as we feel constrained to hold, concurred in locating the road or street in question as it was located by the chancellor's decree. The decree must hence be affirmd.

Affirmd.

ANDERSN, C. J., and MCCLELLAN and DE GRAFFENRIED, JJ., concur.