(100 South. 772)

**MANNING et al. v. HOUSE.   (6 Div. 24.)**

(Supreme Court of Alabama.   June 12, 1924. Rehearing Denied June 30, 1924.)

**1. Dedication ⚛=23—Statutes must be substantially followed and street must be so identified that surveyor can lay it out.**

In dedication of a street for public use, Code 1907, §§ 6028–6030, should be substantially followed, and street must be so identified on map as to location, width, and length, that a surveyor may thereafter go upon ground and lay it out.

**2. Dedication ⚛=23, 25—Facts held not to show statutory dedication of street; map must be acknowledged.**

Where a map purporting to dedicate a street on a newly platted tract was not acknowledged and did not give bearings of street in question, nor its length, held not to constitute a statutory dedication, in view of Code 1907, §§ 6028–6030.

**3. Dedication ⚛=1, 16(1)—"Dedication" defined; acts constituting dedication stated.**

A "dedication" is a donation or appropriation of property to public use by owner, accepted by public, and may be in writing or in parol, evidenced by words or acts, by one declaration or unequivocal act, or by a course or conduct evincing a clear purpose to dedicate.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dedication.]

**4. Dedication ⚛=19(5)—Dedication of streets occurs when owner sells lots according to plat.**

Where an owner causes his land to be surveyed and platted, whether plat be recorded or not, and sells one or more lots according to plat, it constitutes a complete dedication of streets laid out on plat.

**5. Dedication ⚛=19(5)—Dedication of street not prevented because marked by dotted line on map, and necessity of acquiring right of way over railway.**

Where a land company sold lots according to a plat, upon which a street was designated, placed the map on record, and opened the street in part, the facts that street extension was shown in dotted lines, and that it could not be completely opened without acquiring a right of way over a railway, held not to prevent dedication.

---

**6. Dedication ⊗═46—Map construed according to its natural import to those whose interests are affected.**

A map of a platted tract relied on as dedication of street is to be construed, as other writings, according to its natural and reasonable import to those whose interests are affected.

**7. Dedication ⊗═19(1)—Owner held to intend natural consequences of his act in placing map of record.**

In placing a map of a platted tract of record for public inspection, an owner must be *held* to intend the natural consequences of his acts.

**8. Dedication ⊗═19(5)—Sale of lots with reference to street dedicated on map held dedication of lots within its confines.**

The making of a map of a platted tract and sale of lots with reference to a street dedicated thereon operated to dedicate lots within confines of a street, though their relation to such street was not shown, where the map indicated that width of street throughout its extension was 60 feet.

**9. Dedication ⊗═43—Parol evidence admissible to prove extent.**

Parol evidence, being admissible to prove the fact of dedication, is equally admissible to prove the extent.

**10. Dedication ⊗═12—Dedication by mortgagor does not affect mortgagee's interest unless mortgagee assents thereto.**

Mortgagee's interest in lands cannot be affected by dedication made by mortgagor, unless mortgagee assents thereto.

**11. Dedication ⊗═12—Mortgagee held to have assented to dedication of street on newly platted tract.**

Mortgagee assented to dedication of a street on newly platted tract, where it was intimately connected with developing tract, and its sales agent used street as an inducement to purchasers, and its secretary knew and considered recorded map as showing a dedication, and it received from time to time notes given for lots sold for credit on its mortgage, and a map showing such street was published in a newspaper to promote sales of the lots.

**12. Vendor and purchaser ⊗═227—Purchaser held to have purchased lot with notice of dedication.**

Purchaser was not a bona fide purchaser of a lot without notice of its dedication as a street, where, beside physical evidence of public use, he was advised by his vendor of the controversy and landowners protested to him before he acquired a deed to the property.

Appeal from Circuit Court, Jefferson County; Wm. M. Walker, Judge.

Bill in equity by Ernest W. House against the North Birmingham Land Company, the Wilson Land & Improvement Company, K. A. Averyt, W. E. Manning, and Laura E. Manning, to prevent the obstruction of a public street. From a decree adjudging that respondents have no title or interest in lot 7 and a triangular fraction of lot 6. and enjoining the obstruction of the street running thereon, respondents appeal. Corrected and affirmed.

Leader & Ullman, of Birmingham, for appellants.

In order that an easement may be acquired by prescription, it must be shown that the user and enjoyment was adverse to the owner of the estate, under a claim of right, exclusive. continuous, uninterrupted, and with the knowledge, actual or presumed, of the owner Steele v. Sullivan, 70 Ala. 589; Jesse French Piano Co. v. Forbes, 129 Ala. 478, 29 South. 683. 87 Am. St. Rep. 71; Stewart v. White, 128 Ala. 208, 30 South. 526, 55 L. R. A. 211; Whaley v. Wilson, 120 Ala. 502, 24 South. 855; Merchant v. Markham. 170 Ala. 278, 54 South. 236. There can be no valid statutory dedication of a highway, where an essential provision of the statute as to the plat is not complied with. Code 1907, § 6028; Watson v Carver, 27 App. D. C. 555; Lippincott v. Harvey, 72 Md. 572, 19 Atl. 1041; Smith v. City of Opelika, 165 Ala. 630, 54 South. 821. A dedication of land for public use can be made only by the owner, and a mortgagor of premises, as against the mortgagee, has no power to dedicate premises to the public. Johnson v. Dadeville, 127 Ala. 244, 28 South. 700; Hoole v. Atty. Gen., 22 Ala. 190. Proof of ownership, as well as of platting, is essential to establish a dedication at common law Johnson v. Common Council, 127 Ala. 244, 28 South. 700. Where an implied dedication is relied upon, the evidence must establish a continuous and exclusive use by the public for 20 years. Stewart v. Conley, 122 Ala. 179, 27 South. 304. To constitute a dedication, either express or implied, there must be an intention to dedicate on the part of the owner of the property and an acceptance by the public, or by some authorized person or body acting for and in this behalf. Wilson v. Lakeview Land Co., 143 Ala. 291, 39 South. 303. The general rules as to title taken by bona fide purchaser without notice applies, when the incumbrance is a dedication to public use. 18 C. J. 116; Sexton v. Elizabeth City, 169 N. C. 385, 86 S. E. 344; Green v. Miller, 161 N. C. 24, 76 S. E. 505, 44 L. R. A. (N. S.) 231; Schuchman v. Homestead, 111 Pa. 48, 55, 2 Atl. 407; Deacon v. Doyle, 75 Va. 258; South Baltimore Co. v. Smith, 85 Md. 537, 37 Atl. 27.

Vassar L. Allen, of Birmingham, for appellee.

In common-law dedication, it is not necessary that the intent of the owner be actual, but may rest upon his conduct. Lewis,

---

⊗═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Em. Dom. (3d Ed.) § 494; Elliott, R. & S. (3d Ed.) 138; Kuck v. Wakefield, 58 Or. 549, 115 Pac. 428; German Bank v. Brose, 32 Ind. App. 77, 69 N. E. 300; West Point v. Bland, 106 Va. 792, 56 S. E. 802; People v C. & N. W. 239 Ill. 42, 87 N. E. 946; Los Angeles, v. Kysor, 125 Cal. 463, 58 Pac. 90, E. Birmingham R. Co. v. B'ham. M. & F Co, 160 Ala 461, 49 South. 448: Boerner v. McKillip, 52 Kan. 508, 35 Pac. 5; Ruch v. Rock Island, Fed. Cas. No. 12,105; People v. Jones, 6 Mich. 176. A dedication may be effected without designating a space as a street. Ingraham v. Brown, 231 Ill. 256, 83 N. E. 156; Kimball v. Chicago, 253 Ill. 105 97 N. E. 257; McQuillin, Mun. Corp. 3257.

BOULDIN, J. The bill is to enjoin the obstruction of an alleged public street.

The issue on the merits is whether there was a dedication of the property to public use.

In 1907, North Birmingham Land Company owned a rectangular tract of land, some 34 acres in area. W. G. Tyler and E. W. Averyt purchased this tract, with a view to develop and sell the property in town lots for residence purposes. South of this property lay the rights of way of two railroads, and south of the railroads lay an addition known as Park Place in North Birmingham. There was no convenient passway from the proposed addition to North Birmingham. The promoters, therefore, in connection with their purchase acquired from North Birmingham 'Land Company a fractional part of lot 6 and the whole of lot 7, block 41, of Park Place addition, for the purpose of opening a direct street connection between their acreage lands and Thirty-Eighth avenue, North Birmingham. Messrs. Tyler and Averyt organized Wilson Land & Improvement Company, a corporation, to take over their purchase, and they became its managing officers. The acreage lands were laid off into blocks, lots, streets, avenues, and alleys. A plat or map, designated thereon as "Map of Fairmont-Wilson Land & Improvement Co.'s Addition to North Birmingham, Jefferson County, Alabama," was prepared, certified, and recorded in the office of the judge of probate. On this map is shown Twenty-Eighth street, 60 feet wide, running north and south through Fairmont. This street extended south would intersect Thirty-Eighth avenue somewhat east of Twenty-Eighth street of Park Place. The map does not show the avenues and streets of Park Place. It does show in dotted lines an extension of Twenty-Eighth street, Fairmont, in a southwesterly direction across the railroad tracks into Park Place, thence south in the direction of Thirty-Eighth avenue, North Birmingham. This extension is marked "28th St." on the map, and appears of equal width with Twenty-Eighth street in Fairmont.

Without further details, we find from all the evidence that this extension on the map was intended to show a street through fractional lot 6 and lot 7 bought for that purpose, and connecting Twenty-Eighth street, Fairmont, with Thirty-Eighth avenue, North Birmingham.

Pursuant to this purpose, a portion of the curbing and sidewalk on Thirty Eighth avenue abutting lot 7 was removed and some grading done on lot 7. Negotiations were begun to get a grade crossing over the rights of way of the railroads. A crossing being refused, Wilson Land & Improvement Company entered and proceeded to construct a crossing without leave. The railroad crew promptly tore it out. Efforts to get a crossing continued until some five years later when the county of Jefferson and the railroad companies co-operated in building an overhead bridge at Twenty-Seventh Street, further west.

Meantime Wilson Land & Improvement Company proceeded to market lots in Fairmont. Residences were erected. The public proceeded to use lot 7 and fractional lot 6 in passing on foot from Fairmont to Thirty-Eighth avenue, the direct route to the public school, the street car line, and over an improved street into Birmingham. The physical conditions prevented vehicles from crossing the railroad tracks, but they freely used lots 6 and 7 as occasion offered. This use was continued until the bill was filed.

At the time Fairmont was laid out, North Birmingham Land Company also owned lots 8 and 9, adjoining lot 7. About 1909 lots 8 and 9 were sold to W. D. Yerby, who proceeded to erect two residences thereon fronting on lot 7. One of these residences is now owned by the complainant, B. W. House. The use of lot 7 for all the purposes of a street in connection with these residences has continued without hindrance until 1920, when Wilson Land & Improvement Company sold and conveyed a portion of it to W. E. Manning, who proceeded to erect a residence thereon obstructing the free use of lot 7 as a public street. Hence the suit. Thus far the facts are admitted or fairly inferred from the whole record. Further discussion in connection with questions raised in defense will suffice.

Was there a statutory dedication?

Our statute says:

"Such plat or map shall show the streets, alleys, and public grounds, and give the bearings, length, width, and name of each street," etc. Code 1907, § 6028.

The map shall be certified by the surveyor and signed and acknowledged in the same manner as deeds by the owner, his agent, or attorney, etc. Code 1907, § 6029.

"The acknowledgment and recording of such plat or map shall be held in law, and in equity to be a conveyance in fee simple of such portion of the premises platted as are marked or noted on such plat or map as donated or granted to the public." Code 1907, § 6030.

[1] These statutes intend that streets shown on plats certified, acknowledged, and recorded as prescribed are forthwith dedicated to the public use, without awaiting acceptance or use by the public. The recorded plat is its own full and complete evidence of dedication. Title to such street is held in trust to be devoted to actual use when the public convenience requires, and revocable only in the manner prescribed by statute. It is essential that the statutes be substantially followed. The street must be so identified on the map, as to location, width, and length, that a surveyor may thereafter go upon the ground and lay it out. Smith v. City of Opelika, 165 Ala. 630, 51 South. 821; East Birmingham Realty Co. v Birmingham Machine & Foundry Co., 160 Ala. 461. 49 South. 448.

[2] The map before us is not shown to have been acknowleged, does not give the bearings of the street in question, nor its length. It appears from the testimony that when reproduced upon the ground by scale and bearings indicated by the map, this extended Twenty-Eighth street would not conform to lot 7 and fractional lot 6, conveyed for the purpose, and would not extend to Thirty Eighth avenue. It cannot be given effect as a statutory dedication. 18 C. J. p. 67, § 59

Was there a common-law dedication?

[3] A "dedication" is a donation or appropriation of property to public use by the owner, accepted by the public. It may be in writing or in parol; may be evidenced by words or acts; by one declaration or unequivocal act, or by a course of conduct evincing a clear purpose to dedicate. Hill v. Houk, 155 Ala. 448, 46 South. 562.

[4] Where an owner causes his lands to be surveyed and platted, whether the plat be recorded or not, and proceeds to sell one or more lots according to the plat, this is a completed dedication of the streets laid out on the plat. The purchase of lots constitutes an acceptance which inures to the public. An element of estoppel enters into this form of dedication. The obligations of good faith arise by thus holding out to the public the use of the proposed streets as an appurtenance to the property offered for sale. Roberts v. Mathews, 137 Ala. 528, 34 South. 624, 97 Am. St. Rep. 56; East Birmingham Realty Co. v. Birmingham Machine & Foundry Co., 160 Ala. 461, 49 South. 448; Western Ry of Ala. v. Ala. Gr. T. R. Co., 96 Ala. 272, 11 South. 483, 17 L. R. A. 474; Smith v. City of Opelika, 165 Ala. 630, 51 South. 821; Rudolph v. City of Birmingham, 188 Ala.

620, 65 South. 1006; Reed v. City of Birmingham, 92 Ala. 348, 9 South. 161; Webb v City of Demopolis, 95 Ala. 116, 13 South. 289, 21 L. R. A. 62; 18 C. J. p 60, § 44.

This general rule is not questioned. Its application here is questioned on two main grounds:

[5-7] First. That the dotted line extension of Twenty-Eighth street was not intended to show an existing street connection, but merely a proposed connection to be made in the future in case a right of way therefor could be had from the railroads. Evidence is offered tending to show that Wilson Land & Improvement Company had no purpose to presently dedicate and open up a street through lot 7, but intended to do so in the future upon procurement of a crossing by purchase or condemnation; that vigilant efforts were made to acquire the crossing; that prospective purchasers were informed that the opening of a permanent street depended upon getting a right of way; and that the dotted line extension on the map was intended to be only tentative. Complainant's evidence, on the other hand, tended to show that in the sale of lots it was held out that this was a dedicated street connecting Fairmont with Thirty-Eighth avenue.

In passing on this issue, the effect of the recorded map. accompanied with opening the street to public use in so far as the land company had power so to do, are vital questions. A map is to be construed, as other writings, according to its natural and reasonable import to those whose interests are affected. The fact that the street extension on the map was in dotted lines would not, in our opinion, give any notice that it was not a street in esse. It was clearly marked "28th St." Its location as a direct street connection could only be regarded as a distinct element of value to the property offered to the public for sale. Placing the map of record for public inspection, and the actual opening of the connection at Thirty-Eighth avenue, evidence an invitation to the public inconsistent with a mere permissive use. While not a statutory map, it evidences a like intent. Here, as in other cases. a party must be held to intend the natural consequences of his acts; the intent is "read from the acts of the owner." East Birmingham Realty Co. v. Birmingham Machine & Foundry Co., 160 Ala. 467, 49 South. 448; 18 C. J. p. 109, § 127; Flournoy v. Breard, 116 La. 224, 40 South. 684.

The fact that the land company did not own the railroad right of way, and could not dedicate the entire street as mapped, did not prevent dedication in so far as owned by the land company. Because the public could not be furnished all it was offered by the map would not warrant withdrawing the limited use actually given. Viewing the matter in

the fairest light to the land company, it should be accorded the credit of proceeding in good faith with full belief it could and would acquire a crossing, and, so believing, went forward to make and record the map and sell the lots with reference thereto. The case is thus brought within the principle declared by the authorities above cited

[8, 9] Second The question is raised that the making of map and sale of lots cannot operate to dedicate lot 7 and the triangular portion of lot 6 purchased for that purpose, because it does not cover and sufficiently identify the same. In Western Ry of Ala. v. Ala. Gr. T. R. R. Co., 96 Ala. 272, 11 South. 483, 17 L. R. A. 474, was involved a road where the recorded map gave no indicia of the width of the road. It was held this fact did not invalidate the dedication arising from the sale of lots according to the map; that the law fixes the method of determining the width of the road, viz by express dedication, by legal proceedings, and where the right of way depends solely on user, the width is measured by the character of the user.

In the case before us there is on the map indicia of the width of the street. Twenty-Eighth street is shown to be 60 feet in width. The extension is of equal width on the map and marked "28th St. It will be taken to dedicate 60 feet in width so far as the lands were owned by the dedicator.

The map does not show its relation to lot 7 and fractional lot 6, nor the full length. Parol evidence being admissible to prove the fact of dedication, it is equally admissible to prove the extent. It is not a question here of dedication evidenced by user for the prescriptive period, but of actual dedication by act of the owner. The fact of dedication being established, the entire record shows without controversy that the street was intended to occupy the triangular corner of lot 6 and lot 7 leading to Thirty-Eighth avenue. This was in mind when these lots were purchased along with the acreage property

It does appear that running the street 60 feet in width so as to coincide with this fractional part of lot 6, and extending it of like width to the western boundary of lot 7, thence south with lot 7, 50 feet in width, to Thirty-Eighth avenue, leaves a small triangular parcel lying in the northwest corner of lot 7, north of and outside the limits of the street dedicated. It is likewise outside the boundary of the street as described and claimed in the bill. The decree will be here corrected so as to exclude this parcel from its operation.

[10] The interest of a mortgagee in lands cannot be affected by a dedication made by the mortgagor unless the mortgagee assents thereto. 18 C. J. p. 45, § 20.

[11] North Birmingham Land Company was intimately connected with the Fairmont enterprise throughout. The proposed street in question was an element of value in selling the property for development The sale of the lots south of the railroad can only be referred to that purpose. It appears its sales agent used this street as an inducement to Yerby to buy and build on lots 8 and 9; that its secretary knew of and considered the recorded map as showing a dedication; that it received from time to time notes given for lots sold for credit on its mortgage; that in 1911 the map showing this street was published in the Birmingham News to promote sales of lots. Under all the circumstances, it must be taken to have known and assented to the dedication in question, even if the actual release given in 1919 be not construed as including all streets shown on the Fairmont map.

[12] W. E Manning cannot be considered a bona fide purchaser of lot No. 7 without notice of its dedication. Beside the physical evidences of public use, it sufficiently appears that before his purchase he was advised of the controversy by his vendor, and that the landowners protested to him before he acquired a deed to the property

We find no error in the record other than indicated above. The decree will be corrected and affirmed.

Corrected and affirmed The costs of appeal will be taxed one-half to appellants and one-half to appellee.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.