This is an appeal by plaintiff Sam Raine Construction Company, Inc., (Raine) from a partial directed verdict, jury verdict and judgment thereon rendered April 29, 1980, by the Circuit Court of Jefferson County, Bessemer Division, in favor of the defendants Lakeview Estates, Inc., Gary F. Looney, Ronald Keel, Claudine Keel and D.L. Torbert. This Court previously reviewed the case on the propriety of a summary judgment rendered by the trial court in favor of Lakeview Estates, Inc. (hereinafter referred to as Lakeview). Sam RaineConstruction Company, Inc. v. Lakeview Estates, Inc.,366 So.2d 1107 (Ala. 1979). On January 26, 1979, we reversed the summary judgment upon determining that there existed genuine issues of material fact which merited jury attention. At trial, the issue of prescription was resolved in favor of defendant Lakeview by the jury and the trial court directed a verdict for defendant on the issue of dedication. Plaintiff appeals from the directed verdict and from the court's sustaining defendant's objections to the admission of several exhibits. These exhibits sought to be introduced by the plaintiff were certain survey maps, deeds, and letters. We find that the trial court erred in directing a verdict for defendants in light of the evidence presented, and also erred in failing to admit certain evidence presented by the plaintiffs.
On September 21, 1977, Raine filed suit against Lakeview seeking damages and injunctive relief for Lakeview's obstruction of Jefferson County Road 4087, also known as Martin Lake Road. Raine alleged that because of prescriptive use, the road is a public one while Lakeview contended that it is aprivate road serving the residents of the subdivision Lakeview developed. The road runs along the boundary of Lakeview Estates and a parcel of land owned by Raine.
Raine alleged that Lakeview obstructed its use of the road by placing a cattle gate across it and stationing an armed guard at the gate. The Court enjoined Raine from using the road to prevent further physical violence between the parties. As a result of the injunction, Raine's construction equipment was stranded until a new road was cut by which to remove the equipment. Raine alleges that before a second road was cut, a $58,000 bulldozer was mysteriously destroyed.
On March 29, 1978, defendant Lakeview filed its motion for summary judgment and Raine filed a similar motion on May 9, 1978. On May 15, 1978, the trial court granted *Page 544 
summary judgment in favor of Lakeview and dismissed the case. On appeal, this Court affirmed the order granting a preliminary injunction in favor of Lakeview, but reversed and remanded the summary judgment. Sam Raine Construction Company, Inc., v.Lakeview Estates, Inc., supra.
On November 15, 1979, Raine further amended its complaint and claimed dedication of the road to public use, because of the maintenance of the road by Jefferson County and the installation of a water main alongside the road by the Warrior River Water and Fire Protection Authority. In essence, Raine claimed that Lakeview was estopped to deny that the road was public.
The case was tried before a jury on April 21-25, 1980, upon the plaintiff's theories that the road had become public by (1) dedication and (2) prescription. The trial court granted a directed verdict in favor of Lakeview as to all aspects of the case except prescription. Upon the issue of whether Raine had a prescriptive right to use the road, the jury found in its answers to special interrogatories and in its verdict that there was no public road within the boundaries of Lakeview Estates. Plaintiff Raine filed a motion for a new trial which was denied. Raine appeals from the judgment, the directed verdict, and the denial of a new trial.
 I
The critical legal question presented by this appeal involves the question of whether there was a dedication of the subject road by estoppel or by implication.
"A public way is established in either one of three ways: (1) by a regular proceeding for that purpose, or (2) by a dedication as such by the owner of the land the way crosses, with acceptance by the proper authorities, or (3) the way is generally used by the public for twenty years." Powell v.Hopkins, 288 Ala. 466, 262 So.2d 289 (1972).
Raine does not contend that the public nature of the road which is the subject of this controversy was established by a proceeding before the county commission. And even though Raine contended that the road had become a public one by reason of prescriptive use, the jury found against Raine on that issue. In view of this fact, the only remaining question is whether or not there was evidence to support Raine's claim that the road had been dedicated to the public.
The Alabama law on the dedication of a public way is succinctly stated in Hall v. Polk, 363 So.2d 300 (Ala. 1978):
 Hall contends that the thirty-foot strip of property was not sufficiently dedicated as a public road. In Alabama, dedication of a public way may be accomplished by a statutory proceeding or, common law dedication. Witherall v. Strane, 265 Ala. 218, 90 So.2d 251 (1956). A common law dedication consists of acts indicative of the intent of the owner to dedicate property to a public use and acceptance by the public. Trustees of Howard College v. McNabb, 288 Ala. 564, 263 So.2d 664 (1972); Moragne v. City of Gadsden, 170 Ala. 124, 54 So. 518 (1911); Smith v. City of Dothan, 211 Ala. 338, 100 So. 501 (1924); Manning v. House, 211 Ala. 570, 100 So. 772 (1924); Still v. Lovelady, 218 Ala. 19, 117 So. 481 (1928). The owner must unequivocally intend to create a public right exclusive of his own. O'Rorke v. City of Homewood, 286 Ala. 99, 237 So.2d 487 (1970). Further, intent to dedicate may be shown by a deed to an individual where the owner declares part of his land reserved to a public use. Davidson v. City of Birmingham, 212 Ala. 123, 101 So. 878 (1924).
It is well established that common law dedication may be either expressed or implied. An implied dedication arises when the acts or conduct of the owner are deemed to intend a dedication to the public use, such an implication being founded on the doctrine of estoppel in pais rather than by estoppel in grant. 26 C.J.S. Dedication § 15, p. 427 (1956). Once the public accepts the dedication by its use of the land, the owner will be estopped to deny the dedication without a clear showing that his acts *Page 545 
were erroneously construed as intending to dedicate. The doctrine, and its application, were aptly stated in Riley v.Buchanan, 116 Ky. 625, 76 S.W. 527 (1903):
 If, however, there is not an express dedication, but the owner suffers the public to use the passway, knowing it is claiming it as a matter of right, the law presumes a dedication to the public, and presumes the dedicator's intention to be in accord with the public's use. This does not depend upon whether there has in fact been an actual dedication to the public, but it is founded upon the principles of estoppel in pais. If the real owner suffer the public generally to so use his land as a passway, under a notorious claim of right, for a great length of time, whereby others may have been induced to buy property in that vicinity relying upon the apparent right of the public to use this passway, and by which the purchase price of their lands may have been affected, it is unfair that the owner should be permitted to gainsay the truth of it.
The doctrine of estoppel as it applies to dedication of lands was conceived out of the necessity for precluding the owner from resuming any use of the dedicated land inconsistent with established public use. The basis of the doctrine lies in the precept that "to reclaim the land would be a violation of good faith to the public and to those who have acquired private property with a view to the enjoyment of the use contemplated by the dedication." 23 Am.Jur.2d Dedication § 56, p. 50 (1965).
We now consider, in view of the principles of law above-stated regarding the law of dedication, whether there was a scintilla of evidence to support Raine's theory of a common law dedication or dedication by estoppel or by implication.
The testimony was undisputed that the county had done maintenance work on the road in prior years. While county maintenance is not essential to the public status of a road, it is strong evidence that a road is a public one. Davis v.Linden, 340 So.2d 775 (Ala. 1976). In Carter v. Walker,186 Ala. 140, 65 So. 170 (1914), the Court held:
 The establishment of a highway by prescription depends upon its continuous adverse use by the general public who have occasion to use it; and specific recognition and care of such a road by county or municipal authorities is not essential to its public character and status, although such official recognition and care would of course be strong evidence thereof. — 37 Cyc. 29 (III), and the numerous authorities cited. See, also, for general definition, Harper v. State, 109 Ala. 66, 19 So. 901; Lewman v. Andrews, 129 Ala. 170, 29 So. 692; Dunn v. Gunn, 149 Ala. 583, 42 So. 686. [Emphasis added.]
There was also evidence that Lakeview did not pay for the public water system that was installed, that no one had ever been stopped from freely traveling Martin Lake Road, at least until Raine began to develop its land; and that the general public was never aware of any sign posted which declared that the road was a private one.
The evidence we have set out, and which was admitted, was sufficient to prevent the grant of a directed verdict on the dedication issue, but there was other relevant evidence on the dedication question which the trial court erroneously excluded, as we shall point out in Part II of this opinion. Based upon an application of the scintilla rule, and upon considering the erroneous exclusion of relevant evidence, we conclude that the trial court erred in directing a verdict on the dedication question.
 II
Raine contends the trial judge committed reversible error by refusing to admit into evidence several exhibits. Raine frames the issues as follows:
Did the trial court err by sustaining Lakeview's objection to plaintiff's exhibit 1, a survey map?
Did the trial court err by sustaining Lakeview's objection to plaintiff's exhibit 2, *Page 546 
a survey map of Lakeview Estates showing County Road 4087 or Martin Lake Road, signed and certified by Lakeview as a true and correct map or plat of the land shown thereon?
Did the trial court err in sustaining Lakeview's objections to plaintiff's exhibits 5, 6 and 17 (A), each of which is a deed from Lakeview Estates, Inc., to one of its member property owners?
We discuss each issue separately. Plaintiff's exhibit 1 is a survey map prepared by licensed surveyor Ernest O. Little, Jr., in March 1978, at the request of Charles Smith, one of the stockholders of Lakeview and one of the property owners in the subdivision. One of the issues in the case has been whether or not Raine's property touches or abuts the public road.[1] Raine suggests that apparently Lakeview commissioned this survey for the purpose of showing that Raine's property did not abut the public road. Plaintiff's exhibit obviously shows that Raine's property does abut the road.
Little testified that the map was correct in all respects and represented the measurements made by him on the ground and the location of the objects marked thereon. The map, taken in conjunction with Little's testimony, obviously sheds light on one of the major issues between the parties. That fact, coupled with Little's authentication, was sufficient predicate for its admission into evidence, and if for no other purpose, it was admissible in evidence to explain and elucidate Little's testimony to the jury. See Humes v. Bernstein, 72 Ala. 546
(1882).
While in a given case, it might be within the discretion of the trial judge to reject a map, the trial court's action on this map, when coupled with his rejection of other maps or surveys offered by Raine, constituted an abuse of the trial court's discretion, which was compounded when it is considered that the court allowed in evidence a map prepared in anticipation of trial by one of the defendants. Additionally, Little testified that the map was prepared for Lakeview;
consequently, it was proper to come into evidence without the necessity of any other proof, as an admission against interest.
Just as with plaintiff's exhibit 1, plaintiff's exhibit 2 was due to come into evidence for the purpose of throwing light on the location and boundaries of the land in controversy. Additionally, even though surveyor Little did not prepare the map himself, he testified that it correctly represented the location of the objects marked on it and the measurement of distances represented on the map.
Plaintiff's exhibit 2 included the following certificate:
 We, the undersigned, W.M. Douglas, a surveyor, and Lakeview Estates, Inc., by John R. Luckado, its President, as owner, hereby certify that this is a true and correct map or plat of the land shown hereon, showing the streets, avenues, roads and/or other public ways by name, width and location, and that the iron pipe markers have been set at the corners of each lot, and elsewhere as shown and designated by small open circles, and each lot has been numbered and the dimensions of each lot shown in their relationship as platted to the government survey of Sections 2 and 11, Township 19 South, Range 5 West, in Jefferson County, Alabama. In witness whereof, we have hereunto set our hands this 20th day of September, 1961. *Page 547 
 LAKEVIEW ESTATES, INC. (Owner)
 /s/ W.M. Douglas By: /s/ John R. Luckado
W.M. Douglas, John R. Luckado, Surveyor, Reg. No. 1759 President STATE OF ALABAMA ) :
JEFFERSON COUNTY )
 I, E.J. Smithson, a Notary Public in and for said county and state, hereby certify that W.M. Douglas, whose name is signed to the foregoing certificate as Surveyor, and John R. Luckado, whose name is signed as President for Lakeview Estates, Inc., as Owner, who are known to me, acknowledged before me on this date that they executed the same voluntarily, with full authority for and as the act of such individuals and officers.
 Given under my hand and official seal this 20th day of September, 1961.
 /s/ E.J. Smithson
E.J. Smithson, Notary Public
(Emphasis supplied)
Raine contends that the map, with its certification by Lakeview, was not offered in evidence as a muniment of title and that Raine did not expect to prove common law dedication or dedication by estoppel by the use of this document alone. Raine argues in brief: ". . . [T]aken by itself, it constitutes evidence of great probative value as to the character of the user of the road in dispute. Clearly, the map carries with it the inference that the public user of the road was adverse to the ownership interest of Lakeview and not permissive or by revocable license only. To reiterate, Raine did not offer the unrecorded map as a muniment of title or conclusive proof of its claim but merely as an admission against interest."
We agree with Raine that plaintiff's exhibit 2 should have been admitted into evidence in this case.
Plaintiff's exhibits 5, 6 and 17 (A) are deeds from Lakeview Estates, Inc., to its member property owners. Each of the exhibits was certified by the Probate Judge as a true and correct copy of those instruments as they appear of record in the Probate Office of Jefferson County, Bessemer Division. No issue was made as to the authenticity of any of these deeds or the corporate authority of Lakeview to execute and deliver them.
The deeds were executed in 1966, 1969 and 1977, respectively. In each instance, the property conveyed by the deed is described with reference to the road in question, and the road in question is designated as a "Public road" or a "county road." In two of the deeds, there is also a reference to the "right-of-way" of said public or county road. On the issue of dedication, the recitals in the deeds were patently relevant as to whether or not the public user was adverse to Lakeview rather than permissive or by revocable license only.
Lakeview, in brief, admits that the grantees under the deeds "might have been entitled to urge them as evidence of a dedication by estoppel, but a stranger to the transaction, and a stranger who had no awareness of those deeds when the suit was filed or when it acquired its property, certainly cannot take any advantage."
We think the rule of admissibility is otherwise.
 An original deed to realty, which is relevant to the issues in an action and is in all respects regular, is generally admissible in evidence in an action between the parties thereto, or their privies, or in favor of a party claiming under the deed. Insofar as a deed contains admissions of facts amounting to declarations of a pecuniary or proprietary nature against the interest of the maker, it is admissible in evidence by a stranger, whether the plaintiff or the defendant, against all the other parties to the suit who have a joint interest with the party making the admissions.
29 Am.Jur.2d Evidence § 861, p. 963 (1967). Recitals in a deed to which the defendant is a party and the plaintiff a stranger are admissible in evidence as simple admissions only, made by the party by whom the deed was executed. Franklin v. Dorland,28 Cal. 175 (1865). *Page 548 
We agree with Lakeview that to constitute a dedication at common law, there must of course be an intention of the owner to dedicate the property and an acceptance by the public or by some authorized person or body of persons acting in its behalf. See Trustees of Howard College v. McNabb, 288 Ala. 564,263 So.2d 664 (1972).
Raine did not and does not claim that these deeds are necessarily conclusive on the issue of common law dedication, dedication by estoppel or the issue of whether Raine's property abuts the road. Raine does contend that these deeds do contain evidence of probative value. We agree and conclude that the trial court's refusal to allow them in evidence was prejudicial to Raine's case.
The judgment of the trial court is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.
[1] Lakeview argues in brief, on appeal:
 Now, if all of the arguments previously made in this brief by defendants fail, there is still one hurdle, at least 18 inches wide, that the plaintiff cannot jump. The plaintiff does not have standing in court to maintain this action, because it does not have a special interest over and above that of the public. The key to whether a special interest exists must be determined by the use of the land sought to be served by the alleged public road.