Plaintiffs below challenge the trial Court's grant of summary judgment, dismissing their claim for equitable relief in which they seek to set aside the closing of two public streets by the Defendants pursuant to Title 56, § 17, Code 1940 (§ 35-2-54, Code 1975). We reverse and remand.
Defendants (other than the City and its officials) own property on both sides of South 20th Street as well as both sides of 17th Avenue near the point of intersection of these two public streets in the City of Bessemer, Alabama. The Plaintiffs, Mr. and Mrs. L.B. Gwin, own four adjoining commercial lots adjacent to Defendants' property, and also fronting South 20th Street. The legal descriptions of all of the property in question, including the public streets, are referenced to a plat and plan of one of the original subdivision additions to Bessemer, Alabama, of the Bessemer Coal, Iron Land Company.
The land owner Defendants filed a declaration with the City to vacate those portions of South 20th Street and 17th Avenue which are abutted on both sides by their commonly-owned property. Whereupon, the City, by resolution of its City Commission, consented to the vacation of these streets as described in the declaration. (From our understanding of the plat referenced in the legal description of the portion of the streets declared as vacated, it appears that 1 1/2 blocks of 17th Avenue and about 1 2/3 blocks of South 20th Street, including the intersection of these two streets, were closed.) The point of closing of 20th Street is the point where Plaintiffs' four-lot parcel corners on this public thoroughfare. Defendants constructed a fence along the outer boundary of their property and across 20th Street.
At the time of its closing, 20th Street was open from this fence in the direction of 16th Avenue which gave Plaintiffs access to their property. Subsequently, however, this access was effectively cut off by the construction of Interstate 59, leaving Plaintiffs only one possible access: A 12-foot alley, running from the point of closing of 17th Avenue behind the property of the parties (other than the City and its officials) to this litigation.
Defendants supported their Motion for Summary Judgment by affidavit of counsel to the effect that Title 56, § 17, had been fully complied with and that, at the time of the Declaration and Consent of the City, Plaintiffs were not denied reasonable access to their property by virtue of the closing of 20th Street. By counter affidavit, Plaintiffs reply, in substance, that all parties to the vacation proceedings were aware of the proposed location of I-59 well in advance of the closing of 20th Street; hence, the Court acted prematurely in granting summary judgment because reasonable access, under these circumstances, is, at the very least, a fact question. *Page 694 
As briefs and oral arguments of counsel indicate, and as our independent research verifies, this area of the law (vacation of public streets in a non-eminent domain context)[1] has been confusing and unsettled for at least the past 50 years. The common law rule was relatively simple and consistently applied. The confusion in our case law seems to have had its genesis in efforts of the courts to literally apply the legislative delegation by the State to municipalities and counties of the authority to vacate public streets.
This confusion is dramatized by two cases less than three years apart: Chichester v. Kroman, 221 Ala. 203, 128 So. 166
(1930), and Thetford v. Town of Cloverdale, 217 Ala. 241,115 So. 165 (1927). Although the principles that underpin Chichester are the antithesis of those opined in Thetford, the latter spoke not of overruling the former, only of "[putting] a limitation upon" its application.[2] At some risk of oversimplification, it may be stated that our case law consists of two separate and independent lines of cases dealing with the private right of abutting property owners to vacate public roadways.
A further analysis of the cases will be less useful than our efforts here to restate what we perceive to be sound principles of property law in conjunction with established rules of legislative interpretation as applied to the case at hand. Initially, we observe that the issue addressed by Mr. Justice Sayre in Thetford is identical to the issue here presented. The fact that the parties are reversed (the plaintiff in Thetford
was in the position of defendants here) is immaterial. Nor is it of material consequence that the plaintiff in Thetford was seeking to proceed under Title 56, § 21 (35-2-58, Code 1975), rather than § 17, as in this case. The elements of the applicable test cannot vary solely because § 17 speaks of proceeding with the consent of the municipality, while § 21 provides a remedy through a court action in the absence of such consent.[3] The rights of other attingent owners are the same in either event.
We are impressed with the soundness of the basic principles espoused in Thetford. Its central thrust is clear and forthright: Statutes in derogation of the common law prohibition against the vacation of public ways will be interpreted to protect the property interests of non-consenting property owners affected by the proposed closing, subject only to the rule of remoteness. Not only is this a rule of reason, but it is mandated by the most basic application of constitutional due process.
In Thetford, as here, the protestors purchased their property referable to a subdivision map which definitively laid out the parcels by lot and block number as well as the designated scheme of dedicated public streets. As Mr. Justice Sayre eloquently pointed out, it is no consequence that they were not abutting owners to that specific portion proposed to be closed, nor that, upon its vacation as a public street, the objecting parties had other reasonable access to their property.
The legal interest acquired by Mr. and Mrs. Gwin in South 20th Street (as well as all the other streets reasonably incident to the use and enjoyment of their property) by virtue of their purchase of Lots 5, 6, 7 and 8 is not subject to divestiture by the unilateral will of another except for public necessity; and this rule is not altered by the act of the municipality in tendering its consent to the declaration to vacate. For the most recent decision of this Court, consistent *Page 695 
with our holding today, see Hall v. Polk, 363 So.2d 300 (Ala. 1978). See also McPhillips v. Brodbeck, 289 Ala. 148,266 So.2d 592 (1972).
We reject the contention of Appellees that, at the time of closing, I-59 had not yet closed off access of Appellants from the other direction; and this for the reason that our holding would be the same whether or not South 20th Street remained open from that direction. It is the right of the Gwins to have access to their property from either direction along 20th Street that is paramount; and this right, under the undisputed facts of this case, has been violated by the Defendants to this action.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.
[1] For the settled rule in eminent domain cases, see Marksteinv. City of Birmingham, 286 Ala. 551, 243 So.2d 661 (1971). Although the rule in this narrow area appears well settled, unquestionably the fusion of these principles into non-eminent domain cases has contributed to the confusion. The later-citedChichester case is but an example.
[2] It is interesting, though not enlightening, to note that of the four Justices that made up the Court in each case, only the writer is different — the concurring Justices are the same in each case.
[3] See also Title 56, § 32 (23-4-20, Code 1975), which is identical in effect to § 17 except that § 32 makes no reference to "any map, plat or survey."