This is an appeal by certain owners of real property in the town of Gulf Shores from a circuit court judgment declaring void the vacation of a public alleyway. We affirm.
The controversy originated from a declaration of vacation of a public alley by the defendants, owners of Lots 3, 4, 5 and 6 of Block 1, Romeo and Skipper's Subdivision, in accord with Code of 1975, § 35-2-54. For aught that appears, the vacation was regularly obtained. Plaintiffs are also owners of real property in Romeo and Skipper's Subdivision. They brought this action to set aside the vacation on the ground that the alleyway was a vital easement to them for ingress and egress to a private beach. The defendants filed an answer containing a general denial and an attack upon the plaintiffs' standing to sue, because, they alleged, plaintiffs' reasonable access to the private beach by way of a public street was unimpaired by the vacation of the alleyway. The trial court heard the matterore tenus, ultimately declaring the vacation null and void, and specifically finding that the vacation would impair plaintiffs' convenient access to the beach.
Before us the defendants contend that the evidence adduced below was insufficient to establish an interference with reasonable access to beach property, in which plaintiff had a property right, that would give plaintiff standing to have the vacation of the alleyway set aside.
That evidence established that plaintiffs, the Moodys, own a motel located on Lots 14, 15 and 36 within Romeo and Skipper's Subdivision in Gulf Shores. They also own, with certain others, an undivided interest in beach front property on the Gulf of Mexico. Plaintiffs' motel property fronts on the north side of East Gulf Shores Boulevard, the "Gulf Highway," and the defendants own lots south of that highway. East Fourth Street is a dedicated public street 36 feet 3 inches in width and 300 feet in length, and running from its north end at "Gulf Highway" south to a private beach on the Gulf of Mexico at its south end. South of "Gulf Highway" and running east and west so as to intersect East Fourth Street are two public alleys, each being 20 feet wide and 102 feet long. Neither Fourth Street nor the alleys have ever been publicly maintained. The respective streets and ways are depicted in the following plat: *Page 511 
[EDITORS' NOTE: PLAT IS ELECTRONICALLY NON-TRANSFERRABLE.]
Plaintiffs testified that their motel is approximately 200 feet from the beach and that the vacated alleyway is about halfway between the beach and the motel. Plaintiff's testimony was that his motel guests walk or drive the distance from the motel to the beach, using East Fourth Street as their access to the private beach. According to one of the plaintiffs, the next access available to his motel guests would be the public beach about four blocks up the highway, but that guests could not get to his private beach from that point without walking across other private beaches; hence, the only legal access to plaintiffs' private beach was by East Fourth Street. *Page 512 
Plaintiff Lyn Moody also testified that the vacation would eliminate some parking area and block other persons' rights of access to the beach as well. He estimated that at least one hundred people use this access to the beach, and that the parking of more than one car at the closed end of East Fourth Street would make it difficult to turn a car around.
Jerry Boddie, owner of a motel located in Gulf Shores directly behind the Moodys' motel, testified to the interference with access to the private beach in substance as did the Moodys. He emphasized that were there no alleyway, persons driving to the beach on East Fourth Street would find it necessary to park on that street's right-of-way, limiting the number of people who could use the beach and denying access to others, and restricting the turn around area if more than two or three vehicles were parked on East Fourth Street.
Ernest Frady, owner of a beach house in Romeo and Skipper's Subdivision, testified that he and his guests used East Fourth Street for access to the beach, and that closing the alleyway would hinder driving there and turning around, especially if cars were parked along East Fourth Street.
Pat Boddie, wife of Jerry Boddie, testified that the vacation would damage their business, devalue their property, and reduce access to the beach on East Fourth Street because the alleyway was used as a parking area. The gist of her conclusions was that parking on East Fourth Street would cause congestion and inconvenience and necessitate backing automobiles into the "Gulf Highway." Mrs. Boddie conceded that cars could pass one another in the alley, which was 20 feet wide, and on East Fourth Street as well, which is wide enough for more than two cars.
Defendant Mrs. Jeanne Jackson, owner of a beach cottage, testified that she used East Fourth Street for access to her cottage by car. She also testified that vacation of the alleyway would join her lots and make them more valuable. She testified that since 1973, when she purchased her cottage, and for a number of years before, when she rented a cottage for months at a time, she had never seen enough traffic "to amount to anything" on East Fourth Street; that the largest number of people on the beach from across the street was about twenty. She had never seen any traffic congestion; in fact, she said it would be difficult for cars to use the alleys because of the sand. Mrs. Jackson testified to her acquiescence in the vacation and in the permission of the town council to vacate the alley.
Mr. Tutt Barrett, a witness called for the defendants, testified concerning the extent of the use of East Fourth Street. Before Hurricane Frederic it was used as a driveway for persons who had Lots 5 and 6. Since the hurricane, it has been utilized by persons using his cottage. Use of nonowners has been very light; on summer weekends, he said, one car would put in there. When he bought an interest in Lots 5 and 6 he thought East Fourth Street was a private driveway. East Fourth Street, he said, is not very accessible to anyone, being only partly covered with shells, and that if the entire 36-foot width were shelled over there would be no trouble getting in and out.
Mr. Lee McPhearson testified, as one of the owners of Lots 5 and 6, that he had never seen anybody other than himself parked on East Fourth Street. He added that if East Fourth Street were shelled over, the vacation of the alley would not affect anyone's ability to come and go. He, and Mrs. Jackson earlier, testified that the vacation would enhance the value of their property.
It may be observed, in substance, that much of the testimony on both sides dealt with the actual use of the streets and alleys by vehicular traffic, with that testimony being in substantial conflict.
Section 35-2-54, allowing vacation of an alley, states that "[c]onvenient means of ingress and egress to and from their property shall be afforded to all other property owners owning property in the tract of land embraced in the . . . plat . . . ." *Page 513 
First, we decide that plaintiffs do possess standing to contest the vacation, notwithstanding the fact that they are not abutting property owners. They are owners of lots in the subdivision with a designated beach area dedicated for the private use of owners like themselves. Thus, they have a property interest in the ways of access to that beach area as set forth in that plat, subject to the rule of "remoteness,"i.e., lack of a close connection between the wrong and the injury. Black's Law Dictionary, 5th ed. at 1164. See Gwin v.Bristol Steel Iron Works, Inc., Ala., 366 So.2d 692 (1979). The fact that these plaintiffs have such a right in the dedicated beach area, an area whose obvious value requires no discussion for explanation, together with their proximity both to the beach area and to the access road to that area, make their interests in the subject matter far from remote.
On the merits we are guided by several decisions: McPhillipsv. Brodbeck, 289 Ala. 148, 266 So.2d 592 (1972); Gwin, supra;and Booth v. Montrose Cemetery Association, Ala., 387 So.2d 774
(1980).
Brodbeck contains an extensive review of the principles of law which protect those who are affected by the vacation of dedicated streets, and recognizes that these principles apply to ingress to and egress from waterways as well as highways. In that case this Court refused to uphold a vacation which deprived an abutting landowner of his only convenient and reasonable ingress to and egress from Mobile Bay, stating:
 "It is a matter of common knowledge of which we are not unaware that for those who live on or near the beautiful shores of our bays and gulf convenient access to them is of the greatest benefit and that such access enhances the value of such property. . . ." 289 Ala. at 154, 266 So.2d 592.
Likewise, Gwin contains an analysis of cases dealing with vacation, and accords protection to protestors of the vacation of a dedicated public street without regard to whether or not they own land abutting the way proposed to be closed.
Booth also clearly defines the interest of the protestor:
 "Case law in this State reflects that the statute authorizing a platted street to be vacated by `the owner or owners of the lands abutting the street,' is interpreted to protect the interests of other property owners in the subdivision, who may not necessarily own property abutting the street or portions thereof sought to be vacated. Every purchaser of a lot shown on the recorded map of the subdivision has the right, as against the dedicator of the streets and the purchasers of the other lots, to have the designated scheme of public thoroughfares maintained in its integrity, as it existed when he purchased the property, and all persons whosoever may use these public ways as the occasion requires. Whitten v. Ferster, 384 So.2d 88 (Ala. 1980);Thetford v. Town of Cloverdale, 217 Ala. 241, 115 So. 165
(1927); Highland Realty Co. v. Avondale Lane Co., 174 Ala. 326, 56 So. 716 (1911); East Birmingham Realty Co. v. Birmingham Machine Foundry Co., 100 Ala. 461, 49 So. 448 (1909).
 "The vacation statute is in derogation of the common law prohibition against the vacation of public ways and is interpreted by the Court, as mandated by constitutional due process standards, to protect the property interests of nonconsenting property owners affected by the proposed vacation, subject only to the rule of remoteness. Gwin v. Bristol Steel Iron Works, Inc., 366 So.2d 692 (Ala. 1978). The remoteness limitation is also mentioned by the Thetford Court, where, in discussing the rights of the property owners adjacent to the street sought to be vacated, it states, `The interest of the purchasers of lots more or less remote from the street in question may be more or less theoretical, depending on circumstances.'" 387 So.2d at 776-777.
See also Williams v. Norton, Ala., 399 So.2d 828 (1981).
As with the Montrose Cemetery in the Booth decision, no fact question can be presented here to invoke a rule of remoteness *Page 514 
which would deny protection to these plaintiffs, as we have already stated, even though plaintiffs are non-abutting owners. Nor does the reference to convenient ingress and egress in §35-2-54 limit the protection of their respective property interests in the alleyways in question. As Mr. Justice Sayre stated in Thetford v. Town of Cloverdale, 217 Ala. 241,115 So. 165 (1927):
 "Nor is it of any consequence that all attingent owners other than appellant have access to other streets from their lots. Their lots were purchased with the covenant implied by the plat . . . that they should have more than one way of access . . . and it does not lie in the mouth of appellant to say that they should now be satisfied with one way only." 217 Ala. at 243, 115 So. 165.
It follows that the judgment of the trial court, based upon evidence presented ore tenusin a non-jury case, was correct in determining that the alleyway should not be vacated. That judgment, therefore, must be, and it is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.